## APPEAL OF DALRIADA REALTY CO., INC.

Docket No. 5275. Promulgated December 23, 1926.

The sale of real property by petitioner in 1920 held to be a sale on the installment plan. The income to be returned for the year 1920 from this transaction determined.

*E. W. Kemp, Jr., Esq.*, and *C. W. McKnight, C. P. A.*, for the petitioner.

*J. W. Fisher, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency of $72,-106.89 for the year 1920, and an overassessment of $5,511.47 for the year 1921, which arise principally from the action of the Commissioner in holding that the sale of certain real property in the year 1920 constituted a completed sale in that year, in respect of which the petitioner realized a taxable gain, and not a sale of real property on the installment plan.

### FINDINGS OF FACT.

The petitioner, a New York corporation with its principal office at New York City, was organized in 1919, for the purpose of taking over and operating the real estate holdings of Julius Fleischman.

Among the properties taken over by the petitioner was an apartment house situated at 258 Riverside Drive, New York City, which was known as the Peter Stuyvesant Building, at a cost of $575,000, a part of which was liquidated by the petitioner assuming a first mortgage thereon in favor of the Metropolitan Life Insurance Co. in the sum of $443,000.

In 1920 the petitioner sold and transferred the Peter Stuyvesant Building to the 258 Riverside Drive Corporation, a corporation which had been formed for the purpose of taking over and operating the property and disposing of some of the apartments on the cooperative plan, and hereinafter referred to as the purchaser, for a consideration of $750,000, of which $58,500 was paid in cash in the year 1920, $53,500 was represented by 45 notes, secured by capital stock of the purchasing corporation of a par value of $88,000 and six proprietary leases covering a like number of apartments already disposed of on the cooperative plan prior to the sale, $195,000 was represented by a purchase-money mortgage payable in 22 semi-annual installments, beginning April 1, 1922, and the purchaser assumed the first mortgage of $443,000 in favor of the Metropolitan Life Insurance Co.

The first payment due to the Metropolitan Life Insurance Co., after the sale was carried into effect, was met by the purchaser but it defaulted in the second and subsequent payments. The Harris Vought Co., managing agents of the property for the purchaser, was instructed by the Insurance Company to turn over to it, under the terms of the mortgage agreement, all the income thereafter received from the property. The sums so paid over to the Insurance Company were insufficient to pay the interest on the mortgage, and that company threatened to institute foreclosure proceedings.

The general plan of disposing of the cooperative apartments was to sell to prospective tenants thereof capital stock of the purchaser of a par value equal to the value of the apartments they were to occupy. The stock and proprietary leases, the latter usually running for a term of 99 years, were to be delivered to the tenants upon completion of payment therefor. When difficulties arose through the purchaser's default in its payments to the Insurance Company and the income from rentals of non-cooperative apartments failed to materialize in the substantial amounts which it had been represented to them could be expected, the tenants became dissatisfied with their purchases and threatened to bring legal proceedings to protect their interests. This led to negotiations between the tenants and Fleischman as a result of which the purchase-money mortgage given by the purchaser to the petitioner was reduced in September, 1922, from $182,571.42 to $100,000, the original amount thereof, $195,000, having been reduced by a cash payment of $12,428.58.

In June, 1923, the purchaser, with the approval of the petitioner, liquidated the balance due on the unpaid notes on the above mortgage, at a discount of 5 per cent of said balance.

The petitioner recorded this transaction upon its books of account as a sale of real property on the installment plan, that is, it did not immediately accrue as income the entire profit to be realized under the contract, but credited the amount thereof to an unrealized profit account, and thereafter accrued as income that proportion of each payment actually received which the total profit to be realized when payment is completed bears to the total contract price. The income from this transaction, which the petitioner reported in its return for the year 1920, was computed in the following manner:

| | | |
|---|---:|---:|
| Selling price | | $667,428.58 |
| Cost | $575,000.00 | |
| Less: Depreciation | 69,682.98 | |
| | | 505,317.02 |
| Total profit | | 162,111.56 |
| Less: Profits on deferred payments | | 119,855.25 |
| Gross profit for 1920 | | 42,256.31 |
| Deduct: | | |
| Legal expenses of sale | $2,644.83 | |
| Lawyer's Title & Trust Co | 2,082.84 | |
| Advertising | 2,615.83 | |
| Commission paid | 15,500.00 | |
| | | 22,843.50 |
| Net profit for 1920 | | 19,412.81 |

The Commissioner held that the sale of this property constituted a closed and completed transaction in the year 1920, and that the entire profit constituted income for that year. The Commissioner computed the profit from the sale as follows:

| | | |
|---|---:|---:|
| Selling price | | $750,000.00 |
| Add: Depreciation | | 69,682.98 |
| Total | | 819,682.98 |
| Deduct: | | |
| Cost | $575,000.00 | |
| Expense incident to sale | 22,843.50 | |
| | | 597,843.50 |
| Net profit for 1920 | | 221,839.48 |

Accordingly, the Commissioner increased the net income reported by the petitioner in its return for the year 1920 by the amount of $202,426.67, representing the difference in the net income from the sale as computed under the two methods.

OPINION.

MORRIS: The Commissioner has not asserted a deficiency in tax for the year 1921; on the contrary, he has determined that there is

an overassessment for that year. Consequently, upon authority of the decisions of this Board in the *Appeals of Cornelius Cotton Mills*, 4 B. T. A. 255, and *R. P. Hazzard Co.*, 4 B. T. A. 150, we have no jurisdiction as to that year.

Since the hearing of this appeal, Congress has enacted the Revenue Act of 1926, and in section 212 (d) thereof provision is made for installment sales and the rule to be applied in computing the income therefrom. By the provisions of section 1208 of the same Act, the provisions of section 212 (d) are to be retroactively applied in computing income under the Revenue Acts of 1918 and 1921, as well as other acts. Section 212 (d) provides as follows:

Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case * * * of a sale or other disposition of real property, if * * * the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

The Commissioner has promulgated his regulations for the enforcement of the above provisions of the statute. These are embodied in articles 42 to 46, inclusive, of Regulations 69, and include, together with the rules laid down in the Act for computing income from installment sales, a construction of the terms "initial payments," "total contract price," and "purchase price." There the Commissioner has ruled that in the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall not be considered as a part of the "initial payments" or of the "total contract price," but shall be included as a part of the "purchase price." While we express no opinion as to whether the rule laid down in the Commissioner's regulations may be properly applied to and generally followed in all cases involving sales of real property on the installment plan, we believe that his construction of the terms "initial payments," "total contract price," and "purchase price," and the rule for computing the income from installment sales to be returned in any taxable year, as they are laid down in the regulations, are, when applied to the facts in this particular case, and considered in the light of the intent and purpose of the Congress in enacting the provisions of section 212 (d) of the Revenue Act of 1926, both equitable and legally sound.

The total contract price, in the transaction which we have under consideration, is the consideration named in the original agreement, to wit, $750,000, less the Insurance Company's mortgage of $443,000, or $307,000; the initial payment, meaning the total payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale was made, is $58,500; and the purchase price is $750,000. Therefore, since the initial payment received by the petitioner during the year in which the sale was made is less than one-fourth of the purchase price, it is clear that the provisions of section 212(d) of the Revenue Act of 1926, and the regulations promulgated pursuant thereto, are applicable to the facts in this case, and the petitioner is entitled to return the income from the transaction in question on the installment basis.

This brings us to a consideration of the amount of the income which the petitioner should have returned in its return for the year 1920. The rule laid down in the statute is that the petitioner shall return as income from an installment sale that proportion of the installment payments actually received within the year which the total profit realized or to be realized when payment is completed bears to the total contract price. The total contract price, computed in the manner heretofore indicated, is $307,000. The total profit to be realized when payment is completed is $221,839.48, computed as follows:

| | | |
|---|---|---|
| Consideration named in contract | | $750,000.00 |
| Deduct: | | |
| Cost of property | $575,000.00 | |
| Less: Depreciation | 69,682.98 | |
| | $505,317.02 | |
| Selling expenses | 22,843.50 | |
| | | 528,160.52 |
| Total profit to be realized | | 221,839.48 |

The total profit of $221,839.48 is 72.2604 per cent of the total contract price of $307,000. The total payments received in the year 1920 is $58,500; therefore, the income from this transaction to be returned for the year 1920 is 72.2604 per cent of $58,500, or $42,272.33.

The agreement made in 1922 between the purchaser and the petitioner, which resulted in a reduction of $82,571.42 in the purchase-money mortgage, can have no bearing whatever on the computation of the income to be returned for the year 1920. The sale in 1920 was one transaction, and the agreement to reduce the purchase price made in 1922, though involving the same subject matter, was another transaction. The income to be returned for the year 1920 must be computed in accordance with the terms of the original agreement, and

that to be returned for the year 1922 and subsequently must be computed in accordance with the terms of the agreement had in 1922.

*Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN concurs in result only.