J. P. JERPE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103377. Promulgated September 26, 1941.

*George E. H. Goodner*, *Esq.*, and *D. F. Prince*, *Esq.*, for the petitioner.

*E. M. Woolf*, *Esq.*, for the respondent.

**OPINION.**

KERN: The single issue is the amount of income taxable in 1938 under the installment plan elected by the taxpayer, after the reduction in a prior year of the amount of the purchase price agreed on in the contract sale of August 3, 1929. The relevant provisions of

the statutes are set out in the margin.[1]  Petitioner contends that this contract was an agreement to sell and not a contract of sale; in other words, that it was executory in character.  Resting on this premise, he then argues that the sale price was altered and reduced by the sum of $100,000, involved in petitioner's cancellation in 1931 of two notes, each in the face amount of $50,000; and that this readjustment must, therefore, be reflected in the profit taxable on the next to the last installment paid and returned in 1938.  The petitioner makes the same contention on the reflection of actual profit, apparently regardless of the nature of the contract.  Respondent, on the other hand, argues that a deductible loss resulted under section 44 (d) in the year 1931, through the cancellation in that year of the two notes for a total amount of $100,000, and that this loss did not operate to change the taxable percentage of profit as originally computed, realized on the payment in 1938.  In other words, his theory appears to be that, once the installment method is elected, gain or loss is determined for tax purposes in each year on the basis of the original sale price without regard to the outcome of the whole transaction.  He relies on his ruling G. C. M. 11845, C. B. XII-1 (June 1933), p. 52, and on our decision in *Gilbert W. Lee*, 6 B. T. A. 135.

The installment provision obviously was intended to relieve the petitioner, where he gets less than 40 percent of the sale price as a cash payment, from the burden of returning the full amount of the profit at the time the sale is executed, and to allow him to apportion the profit evenly over the later payments as received.  The introductory clause of section 44 seems to indicate this intention in plain language.  See 70th Congress, S. Rept. 960 (Committee on Finance), p. 24; H. Rept. 2 (Committee on Ways and Means), p. 16; on the 1928 Revenue Act.  If the installment method is open to the petitioner, it becomes of no consequence whether the obligation has fully accrued to him in the year of the contract by the passage of

---

[1] Revenue Act 1928.—

SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

\*    \*    \*    \*    \*    \*    \*

(d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition.  The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

title, whether he has retained a vendor's lien, or whether the contract is executory until the final payment. He is to return a percentage of each payment as profit when made in any case. We leave on one side, therefore, any consideration of petitioner's argument that the contract was executory, and proceed to discuss the question solely on the ground that it was an installment contract and, as such, income under it was to be determined in accordance with the statute.

The respondent's argument takes little account of the actualities of taxation, and does too much homage to the mere form of the statute. A profit never made and income never received can scarcely be taxable, *Kerbaugh Empire Co.* v. *Bowers*, 271 U. S. 170. While it is true that the installment loss of 1931, if it had been claimed by the petitioner and allowed in that year, might have offset other gain in the same year and have thus become a real factor in the determination of taxable income in that year, that was not the case here. The loss was neither claimed nor allowed in that year, nor is there any intent expressed in the statute that it shall be so taken, as respondent contends. The whole deferred payment plan of returning income looks to the whole transaction, and not to separate losses or gains in the several years of payment. The percentage return of gain is a logical means to this end. While section 44 (d) provides, therefore, for the reckoning of a loss on such payments, it must look to such a loss on the whole transaction, which can not properly be reflected *in vacuo*, but must be reflected either in the reduction of total gain or as a net loss on the whole transaction, which can not be known until the final payment. On the other hand, the same section provides for reckoning gain also on the basis of actual realized gain; and, consequently, where the seller has reduced the buyer's obligation, the seller's gain must be reduced accordingly, and the percentage of gain to be returned for tax purposes must be readjusted to the new condition of things. Although no case has been called to our notice in which the question has been fully considered before, we are clearly of the opinion that any other reading of the section would stultify its obvious purpose. Cf. *Daniel Tracy Beers*, 31 B. T. A. 117, 121; affirmed on another issue, 78 Fed. (2d) 447.

*Lee's* case, *supra*, relied on by the respondent, is not in point, for it holds merely that the petitioner may not elect the installment basis and thereafter change to another basis. Obviously, adherence to the elected basis is necessary to protect the revenue. But here we are concerned with the proper application of that basis to the final fulfillment of the contract. Although the final payment was not made until 1939, the seller's gain could not be greater than the amount he now claims for 1938. Nor does the Commissioner's ruling, *supra*, help more, for it involved a net loss on a transaction which was

nondeductible, since it was not entered into for profit, the object of the sale being the taxpayer's own dwelling house. The Commissioner, consequently, denied the refund of "gain" earlier returned in installment payments.

We think that the reduction of $100,000 in the selling price of petitioner's stocks, through cancellation of the two notes in 1931, must be reflected in the percentage of taxable gain returned thereafter, and that the gain for 1938, now before us, must be reduced accordingly.

Reviewed by the Board.

*Decision will be entered under Rule 50.*