DEAN W. COX AND LAVINA M. COX, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3403-72. Filed May 16, 1974.

*William H. Shields*, for the petitioners.
*Gerald W. Hartley*, for the respondent.

GOFFE, *Judge:* The respondent determined a deficiency of $7,779.54 in petitioners' Federal income tax for the taxable year 1968. The issues before the Court are: (1) Where section 483 [1] is applied to impute interest to deferred payments received or receivable on account of a contract to sell stock, is the selling price for purposes of installment reporting under section 453(b) determined by subtracting total unstated interest from the stated selling price (selling price determined by negotiation of the parties to the contract); (2) where a casual sale of personalty fails to qualify for installment reporting under section

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue.

453(b) because the payments in the taxable year of sale exceed 30 percent of the stated selling price reduced by total unstated interest within the meaning of section 483, can the parties amend the contract of sale pursuant to section 483(e) subsequent to the taxable year of sale in order to qualify for installment reporting under section 453(b); and (3) what was the value, if any, of a one-half interest in a lease-option on real property which petitioners received in the taxable year of sale?

The Commissioner made other adjustments to petitioners' 1968 return. These adjustments are mechanical and rest solely upon our determination of the principal issues.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference.

At the time the petition was filed herein, Dean W. and Lavina M. Cox (hereinafter sometimes referred to as petitioners) resided at Keystone Heights, Fla. 32636. Petitioners filed their Federal income tax return for their taxable year 1968 with the Internal Revenue Service Center, Chamblee, Ga.

Prior to June 27, 1968, petitioners owned 50 percent (50 shares) of the outstanding stock in Carlos Bay Food Center, Inc. (Carlos). Carlos operates a grocery store in Fort Meyers Beach, Fla.

On June 27, 1968, Carlos and petitioners entered into a written agreement whereby Carlos would redeem all of petitioners' stock in Carlos. The agreement provided for a $101,347.18 stated selling price determined by the parties to the agreement by subtracting Carlos' liabilities and accrued rent from its assets and dividing the result by 2. The total consideration was payable by a downpayment in the taxable year of sale of $29,390.68 (29 percent of the stated selling price) and the balance of $71,956.50 by a non-interest-bearing promissory note for $71,956.50, and a rewritten lease-option agreement reflect-on June 1, 1969, 1970, and 1971. Any installments in default bore interest at the rate of 6 percent. In addition, Carlos agreed to transfer one-half of its interest in a lease-option on vacant land called the Smooth property located on Estero Island, Lee County, Fla.

In 1968, pursuant to the written agreement, petitioners surrendered their stock in Carlos and received $29,390.68 in cash, Carlos' promissory note for $71,956.50, and a rewritten lease-option agreement reflecting petitioners' one-half interest. No value was assigned to the lease-option in the contract; therefore, the lease-option had no effect on the stated selling price or payments received in the taxable year of sale under the terms of the contract.

The property covered by the lease and option was located on a residential street which was not zoned for commercial development. The lease and option was acquired by Carlos in 1960 for construction of a grocery store. The lease had a 5-year term and the rental consisted of the taxes and interest, presumably on a note which was secured by the property. The annual payments which Carlos made on the Smooth property were $1,500 for interest and $1,800 to $2,000 for taxes. After petitioners acquired a one-half interest in the lease-option, they paid one-half of such annual charges or approximately $1,650 per year. During this period, Carlos and petitioners had to keep the grass mowed on the Smooth property and they had no right to occupy the property. Petitioners received no offer to sell their interest in the Smooth lease and option until 1971 when Carlos desired to exercise the option. At that time, petitioners sold their interest to A. W. D. Harris, president of Carlos, for $15,000 cash.

At the time petitioners received a one-half interest in the lease-option, such one-half interest had a fair market value of at least $20.

A revenue agent assigned to examine petitioners' income tax return for 1968 questioned petitioners' use of the installment method of reporting their gain on the redemption of their stock in Carlos. After the revenue agent questioned such tax treatment, petitioners and Carlos amended the June 27, 1968, agreement on December 11, 1970.

The amendment to the agreement provided for increasing the stated selling price from $101,347.18 to $103,886.02 payable as follows:

| Payment date | Amended principal | Interest | Amended total |
|---|---|---|---|
| 6/27/68 | $29,390.68 | 0 | $29,390.68 |
| 6/1/69 | 22,829.64 | $1,155.86 | 23,985.50 |
| 6/1/70 | 23,985.50 | 0 | 23,985.50 |
| 12/31/70 | 0 | 3,204.58 | 3,204.58 |
| 6/1/71 | 21,794.18 | 1,525.58 | 23,319.76 |
| Total | 98,000.00 | 5,886.02 | 103,886.02 |

The rate of interest on installments in default was increased from 6 percent to 7 percent.

The stated selling price (excluding stated interest), 30 percent thereof, and downpayment received in taxable year of sale under the terms of the agreement before amendment and after amendment are as follows:

| | Agreement before amendment | Agreement as amended |
|---|---|---|
| 1. Stated selling price, excluding stated interest | $101,347.18 | $98,000.00 |
| 2. 30 percent of selling price, excluding stated interest | 30,404.15 | 29,400.00 |
| 3. Downpayment received in year of sale | 29,390.68 | 29,390.68 |
| Difference between 2 and 3 | 1,013.47 | 9.32 |

The Commissioner, in his statutory notice of deficiency, determined that petitioners were not entitled to report their gain from the redemption of their Carlos stock under the installment method with the following explanation:

(a) It is determined: (1) that the note in the amount of $71,956.50 received by you in connection with the 1968 sale of your Carlos Bay Food Center, Inc. capital stock included unstated interest within the meaning of section 483 of the Internal Revenue Code; (2) that the total payments of $101,347.18 to be made under the contract of sale included unstated interest under the provisions of section 483 of the Internal Revenue Code in the amount of $6,714.50 and that the balance of $94,632.68 constitutes the selling price of your stock; (3) that the gain realized on the sale of your stock may not be reported on the installment basis because the payment of $29,390.68 received by you in the year of sale exceeded the 30% limitation provided by section 453(b)(2) of the Internal Revenue Code; and (4) that your income be increased by $19,920.29, computed as shown on Exhibit A.

The respondent's computation of the unstated interest was as follows:

| Months deferred | Due date | Payments | Factor [1] | Allocation of payments | |
| --- | --- | --- | --- | --- | --- |
| | | | | Principal | Unstated interest |
| 9—15 | 6/1/69 | $23,985.50 | .95181 | $22,829.64 | $1,155.86 |
| 21—27 | 6/1/70 | 23,985.50 | .90595 | 21,729.66 | 2,255.84 |
| 33—39 | 6/1/71 | 23,985.50 | .86230 | 20,682.70 | 3,302.80 |
| | | 71,956.50 | | 65,242.00 | 6,714.50 |
| Downpayment | | 29,390.68 | | 29,390.68 | 0 |
| Totals | | 101,347.18 | | 94,632.68 | 6,714.50 |

[1] Column b, Table I, of sec. 1.483–1(g), Income Tax Regs.

The respondent's Exhibit A setting out the computations of the increase in taxable capital gain was as follows:

| | |
| --- | --- |
| Downpayment received in year of sale | $29,390.68 |
| 30 percent of $94,632.68 payments allocated to principal | 28,389.80 |
| Excess over limitation for installment sale | 1,000.88 |
| Selling price | 94,632.68 |
| Basis in stock sold and cost of sale | 35,600.00 |
| Long-term capital gain realized | 59,032.68 |
| Less: Sec. 1202 deduction | 29,516.34 |
| Taxable long-term capital gain | 29,516.34 |
| Taxable gain reported on return | 9,596.05 |
| Increase in taxable capital gain | 19,920.29 |

## OPINION

All of petitioners' stock in Carlos was redeemed pursuant to a written agreement. Respondent does not question petitioners' treatment of

the gain as long-term capital gain. The redemption is equivalent to a sale or exchange of a capital asset. Sec. 302(a).

Petitioners reported the gain from the redemption of their stock in Carlos as a casual sale of personal property which is provided for by section 453(b).[2] The controversy centers around the meaning to be given to the term "selling price" contained in section 453(b)(2)(A)(ii).

Respondent contends that "selling price" does not include interest. The Commissioner, in his statutory notice, imputed interest to the deferred payments to which section 483 applies and reduced the stated selling price (per the original agreement) of $101,347.18 by the total unstated interest of $6,714.50 resulting in a $94,632.68 "selling price" for purposes of section 453(b). If the Commissioner's determination was correct, petitioners are not entitled to report the gain under the installment method because section 453(b)(2)(A)(ii) provides that payments in the taxable year of sale may not exceed 30 percent of the "selling price." Thirty percent of $94,632.68 equals $28,389.80. Petitioners received a cash downpayment in the year of sale of $29,390.68 which is $1,008.88 greater than the $28,389.80 maximum downpayment allowed under section 453(b).

Petitioners first contend that the Commissioner erroneously subtracted the total unstated interest from the stated selling price and argue that only the first year's imputed interest should be deducted in determining the "selling price." Petitioners contend further that the 1970 amendment to the 1968 agreement relates back to 1968 and per-

---

[2] SEC. 453. INSTALLMENT METHOD.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.

(1) GENERAL RULE.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

(2) LIMITATION.—Paragraph (1) shall apply—

(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

(i) there are no payments, or

(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

(B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code.

(3) PURCHASER EVIDENCES OF INDEBTEDNESS PAYABLE ON DEMAND OR READILY TRADABLE.—In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser.

mits use of the installment method because 30 percent of the $98,000 "amended selling price" is $29,400 which is $9.32 more than the $29,390.68 cash downpayment received in the taxable year of sale. After asserting that the redemption under the June 27, 1968, contract fails to qualify for installment reporting for the reasons set out in the statutory notice, respondent argues that section 1.483–1(f)(2), Income Tax Regs., precludes petitioners' giving retroactive effect to the increased selling price under the 1970 amended contract in order to qualify the 1968 redemption for installment reporting under section 453(b). Respondent further argues that even if the 1970 amendment were allowed to relate back to 1968 and increase the selling price of the redeemed stock, petitioners could not qualify for use of the installment method because they received payment in the taxable year of sale in excess of 30 percent of the selling price. If the lease-option had a fair market value of $20, respondent would prevail. Petitioners contend that the lease-option had no value in 1968 when they received it.

The question of the proper value of the lease-option was raised for the first time at trial by respondent. While there were no amended pleadings, petitioners neither objected nor claimed surprise at the trial and the parties proceeded on the assumption that this was in issue. Counsel for both parties briefed this issue. Under the circumstances, this issue is properly before the Court. See *Arthur C. Ruge,* 26 T.C. 138 (1956).

Section 483 [3] was added to the Internal Revenue Code in 1964 to correct a practice whereby the seller in an installment sale escaped

---

[3] The pertinent portion of sec. 483 is as follows:

SEC. 483. INTEREST ON CERTAIN DEFERRED PAYMENTS.

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

(b) TOTAL UNSTATED INTEREST.—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

(1) the sum of the payments to which this section applies which are due under the contract, over,

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary or his delegate. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

(c) PAYMENTS TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

income taxed as ordinary income by the parties' not providing for interest on deferred payments. H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 196; see also S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 604. Under such practice, all of the proceeds from the sale were taxed at capital gains rates.

By T.D. 6873 (approved Jan. 17, 1966), 1966–1 C.B. 101, regulations were promulgated under section 483 which point out that in the case of a casual sale of personal property treatment of a portion of the stated selling price as unstated interest under section 483 may affect eligibility for reporting under the installment method. Sec. 1.483–2, Income Tax Regs.[4] In addition, section 1.453–1(b)(2), Income Tax Regs.,[5] was amended to provide that unstated interest under section 483 does not constitute part of the "selling price" as that term is used in section 453(b)(2).

In *Raymond Robinson*, 54 T.C. 772 (1970), affd. 439 F. 2d 767 (C.A. 8, 1971), we upheld the validity of the regulations involved here and held that a casual sale of personalty failed to qualify for installment reporting under section 453(b) because the payment in the taxable year of sale exceeded 30 percent of the stated selling price reduced

---

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest. Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

(2) TREATMENT OF EVIDENCE OF INDEBTEDNESS.—For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.

[4] Sec. 1.483–2 Treatment as interest for purposes of Code; exceptions and limitations to application of section 483.

(a) *Treatment as interest for purposes of Code*—(1) *Effect on income, deductions, basis, etc.*—(i) *In general.* Generally, a contract under which there is total unstated interest (within the meaning of section 483(a)) shall be treated as if such interest were actually provided for in the contract, and such unstated interest shall constitute interest *for all purposes of the Code.* Thus, for example, except as provided in paragraph (b)(1) of this section, in the case of a sale of property, total unstated interest shall not be treated as part of the selling price of such property. * * *

\*   \*   \*   \*   \*   \*   \*

(2) *Other effects of treating portion of sales price as unstated interest.* This subparagraph sets forth some illustrations of the effects of treating a portion of the sales price as unstated interest. These illustrations are not all-inclusive. * * * *Such treatment may affect eligibility to use the installment method of accounting under section 453(b)(2) (relating to limitation on installment method)*, except that section 483 shall have no effect in determining whether payments received prior to January 1, 1964, in the taxable year of sale exceed 30 percent of the selling price of the property. * * *

[Emphasis added.]

[5] Sec. 1.453–1(b)(2) For purposes of section 453, any total unstated interest (as defined in section 483(b)) under a contract for the sale or exchange of property, payments on account of which are subject to the application of section 483, shall not be included as a part of the selling price or the total contract price. For rules relating to payments received prior to January 1, 1964, see paragraph (a)(2) of § 1.483–2.

by total unstated interest computed under section 483. Petitioners have advanced no argument which convinces us that our opinion was incorrect. Accordingly, we follow *Robinson* and hold that in determining the "selling price" for purposes of section 453(b), the Commissioner correctly reduced the stated selling price under the 1968 agreement by total unstated interest determined pursuant to the provisions of section 483.

Petitioners contend that the 1970 amendment to the 1968 agreement relates back to 1968 and permits use of the installment method because 30 percent of the $98,000 "amended selling price" is $29,400 which exceeds the $29,390.68 cash downpayment received in the taxable year of sale. Section 1.483–1(f)(2), Income Tax Regs.,[6] provides that events occurring after the year of payment cannot change the characterization of the payments as interest or principal. Petitioners argue that such section of the regulations is invalid because it is inconsistent with section 483(e) of the Code[7] and section 1.483–1(f)(1), Income Tax Regs.[8]

Section 483(e) does not provide that a change in the terms of the contract relates back to the year of sale. That section provides that recomputation of total unstated interest will be made in accordance with regulations prescribed by the Secretary or his delegate. Section 1.483–1(f)(2) of the Treasury regulations is not inconsistent with section 483(e) of the Code or section 1.483–1(f)(1) of the Treasury regulations. Section 1.483–1(f)(2), Income Tax Regs., clearly applies to petitioners' situation and is not unreasonable under the authority granted to prescribe regulations under section 483(e). Treasury regulations must be sustained unless unreasonable and plainly inconsist-

---

[6] Sec. 1.483–1(f)(2) *Effect of change in terms of contract on characterization as principal or interest.* Except as otherwise provided in this paragraph, the characterization as principal or interest of any portion of a payment under a contract for the sale or exchange of property is not changed as a result of events occurring after the close of the taxable year in which the payment is made. Thus, for example, if a portion of a payment was characterized as interest for a prior year, and such characterization resulted in a corporation being treated as a personal holding company for such prior year, any change in the terms of the contract does not decrease the portion of such payment characterized as interest for purposes of redetermining personal holding company status for such prior year. However, the parties to a contract may change its terms so as to alter for the year of change and for any subsequent years the characterization as principal and interest of any portion of a payment under the contract.

[7] SEC. 483(e). CHANGE IN TERMS OF CONTRACT.—If the liability for, or the amount or due date of, any payment (including interest) under a contract for the sale or exchange of property is changed, the "total unstated interest" under the contract shall be recomputed and allocated (with adjustment for prior interest (including unstated interest) payments) under regulations prescribed by the Secretary or his delegate.

[8] Sec. 1.483–1(f) *Changes in terms of contract*—(1) *In general.* If the liability for, or the amount or due date of, any payment (including interest) under a contract for the sale or exchange of property is changed during any taxable year (referred to as the "year of change"), the total unstated interest under the contract shall be recomputed under the rules of paragraphs (c) and (d) of this section (as if the original contract had contained the changed terms) and allocated (in the manner provided in subparagraph (4) of this paragraph) with adjustment for prior interest (including unstated interest) payments. * * *

ent with the revenue statutes and they constitute contemporaneous constructions by those charged with the administration of these statutes which should not be overruled except for weighty reasons. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). The Fifth Circuit, to which an appeal in this case would lie, recognizes this rule. See, e.g., *Group Life & Health Insurance Co.* v. *United States*, 434 F. 2d 115, 120 (C.A. 5, 1970); *Miami Beach First National Bank* v. *United States*, 443 F. 2d 116, 120 (C.A. 5, 1971). This holding is also consistent with our decisions in *Dalriada Realty Co., Inc.*, 5 B.T.A. 905 (1926), and *J. P. Jerpe*, 45 B.T.A. 199 (1941), wherein we held that a reduction in the selling price subsequent to the year of sale will not disqualify use of the installment method if the transaction qualified for installment reporting in the year of sale. The effect of a reduced selling price on reported gain is only reflected on the taxpayer's return for the year of change and subsequent years. If reduction of the selling price subsequent to the year of sale cannot disqualify the transaction for installment reporting, increasing the selling price subsequent to the year of sale cannot qualify such a transaction if it did not qualify in the year of sale.

Even if the 1970 amendment were permitted to alter the 1968 agreement as to the taxable year 1968, petitioners could not prevail because they received more than 30 percent of the "amended selling price" in that year. Petitioners insist that the one-half interest in the lease-option which they received had no value when they received it in 1968. If it had a value in excess of $20, the transaction does not qualify for installment reporting because the $29,410.68 ($29,390.68 in cash plus $20 lease-option) in payments received in the taxable year of sale exceeds $29,406 which is 30 percent of the "amended selling price" ($98,000 plus $20 lease-option).

Petitioners offered no proof that the lease-option was worthless in 1968 except their own unsupported testimony. They sold the one-half interest in 1971 for $15,000. From 1968 to 1971, they paid interest and taxes on their interest of approximately $1,650 per year. We do not need to determine what the fair market value was in 1968. We need only determine whether it equaled or exceeded $20. In view of the fact that petitioners paid approximately $1,650 each year to hold such interest and they sold it 3 years later for $15,000, it is obvious to us that the lease-option interest received by petitioners in 1968 had a value of at least $20. In determining the selling price under the installment method of reporting, assets other than cash are included at their fair market value. *Tombari* v. *Commissioner*, 299 F. 2d 889 (C.A. 9, 1962), affirming 35 T.C. 250 (1960).

Petitioners are not, therefore, entitled to report their gain from the sale of Carlos under the installment method.

*Decision will be entered for the respondent.*