FRANK HUTCHISON AND BETTY HUTCHISON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hutchison v. Commissioner
Docket No. 2373-78.
United States Tax Court
T.C. Memo 1981-513; 1981 Tax Ct. Memo LEXIS 233; 42 T.C.M. (CCH) 1089; T.C.M. (RIA) 81513; September 15, 1981. *233 Petitioner sold an apartment complex in 1971 pursuant to a "wrap-around" mortgage arrangement and properly elected to report the gain on the sale under section 453. Affter the purchaser was delinquent in making payments on his mortgage debt to petitioner-seller, a 1975 court approved settlement was executed between the petitioner and the purchaser modifying the 1971 sales contract. Held, facts and circumstances surrounding the settlement reveal that in 1975 the purchaser took the apartment complex subject to a mortgage held by petitioner's mortgagee. Thus, for purposes of applying section 453, the excess of the mortgage principal over petitioner's unrecovered basis in the property at the time of the settlement is to be considered a payment to petitioner in 1975. Kenneth R. Mourton, for the petitioners. Charles L. McReynolds, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies of $ 4,298.53 and $ 86,326.93 in petitioners' Federal income tax for 1974 and 1975 respectively. Due to concessions by petitioners, the sole issue for our determination is whether the excess of mortgage principal over the basis of an apartment *234 complex sold in 1971 by petitioner-husband should be treated as an installment payment received by him in 1975 as a result of a restructuring of the original sales contract in 1975. FINDINGS OF FACT Petitioners Frank and Betty Hutchison are husband and wife who resided in Rogers, Arkansas, at the time the petition in this case was filed. Federal income tax returns for 1974 and 1975 were filed by petitioners with the Internal Revenue Service Center, Austin, Texas. On August 15, 1971, Frank Hutchison (hereinafter petitioner) sold an apartment complex located in Fort Worth, Texas, for $ 1,650,000.00 in which he had an adjusted basis of $ 1,024,764.62. A proper election to report the gain in installments was made pursuant to section 453. [1] Terms of the sale involved a so-called "wrap-around" mortgage wherein the purchaser, Whitney-Bristol Court Properties [2] (hereinafter Bristol Court) executed a note to petitioner for the entire purchase price of $ 1,650,000.00. Payments pursuant to the note were made directly to petitioner who in turn made mortgage payments to the holder of an original mortgage on the property, the Aetna Life Insurance Company. The 1971 sale to Bristol Court had *235 no effect on petitioner's obligation to Aetna. Payments by petitioner to his mortgagee were made through Aetna's loan service agent, Ryan Mortgage Company (hereinafter Ryan). The outstanding principal on the mortgage held by Aetna at the date of petitioner's sale to Bristol Court was $ 1,300,133.84. This amount exceeded petitioner's basis in the property conveyed by $ 275,369.22. Such excess was not included in income on petitioner's 1971 Federal income tax return. In June, July and August of 1973 Bristol Court failed to make the $ 10,500.00 monthly payments to petitioner requird by the "wrap-around" mortgage arrangement. Petitioner continued to make payments to Aetna pursuant to the original mortgage on the property. As a result of Bristol Court's delinquency, petitioner instituted proceedings to repossess the apartment *236 complex. However, foreclosure proceedings were halted in November of 1973 as Bristol Court was successful in securing a restraining order from a Taxes court which permitted the purchaser to make up the delinquent payments by the end of 1973. Pending the outcome of an appeal of the restraining order by petitioner, the court ordered that Bristol Court make monthly payments directly to Ryan in the amount of $ 10,255.00 and that monthly payments of $ 245.00 be tendered to petitioner. This arrangement continued for over 2 years under court supervision. On March 3, 1975 Bristol Court and petitioner executed a court-approved agreement. The agreement provided that prior to July 1, 1975 Bristol Court may petitioner $ 105,000 cash plus interest at the rate of 8 1/2 percent per annum and execute a note in the amount of $ 100,000 with interest of 8 1/2 percent secured by a second lien deed of trust. The note was to be paid in monthly installments over 16 years. The court proceeding was dismissed in May of 1975 after Bristol Court's payment of $ 107,018.24 (which included $ 2,018.78 of interest) to petitioner was made and the $ 100,000 note was tansferred to petitioner. The settlement resulted *237 in a net reduction of $ 54,650.41 [3] in the selling price of the apartment complex. Petitioner's unrecovered basis in the property at the time of the restructuring of the sales contract was $ 889,836.06. The principal outstanding on the mortgage debt due Aetna exceeded petitioner's unrecovered basis in the property by $ 283,237.27. A copy of the agreement between petitioner and Bristol Court was transmitted to Ryan, whereupon the payment account held by Ryan was transferred to the name of the purchaser, Bristol Court. After the settlement, the purchaser made all the required mortgage payments due Aetna directly to Ryan. Petitioner *238 had almost no contract with Aetna or Ryan subsequent to his court approved agreement with Bristol Court. However, no written assumption agreement was ever executed wherein Bristol Court expressly assumed personal liability for the Aetna mortgage. Thus, petitioner retained personal liability on the original mortgage despite the fact that Ryan sought payment from Bristol Court. Petitioner, however, felt that in the event of default by the purchaser, the debt could be satisfied from the property. Petitioner claimed deductions through 1974 for mortgage debt interest paid to Aetna. No similar deductions were claimed by petitioner in 1975 because, due to the settlement with Bristol Court, petitioner made no payments to Aetna. On his 1975 Federal income tax return, petitioner, utilizing the installment sales provision reported a recognized gain [4] of $ 21,457.26 [5] *239 on the sale of the apartment complex resulting from the payments received in 1975 pursuant to the settlement with Bristol Court. In August of 1975 petitioner sought counsel by letter, on the tax effects of the 1975 settlement with Bristol Court.In June of 1977 petitioner, through his accountant, lodged a formal protest against respondent's proposed adjustments. In both of these instances *240 petitioner either personally or through his accountant described the circumstances attending the 1975 settlement with Bristol Court. In both cases the mortgage debt owed Aetna was referred to as having been assumed by the purchaser. While admitting in his protest letter that there had been an assumption of the mortgae, petitioner, through his accountant, emphasized that he had not been absolutely relieved from liability on the mortgage held by Aetna. In his notice of deficiency respondent determined that the excess of mortgage principal owed by petitioner to Aetna over petitioner's unrecovered basis in the property (an excess of $ 283,237.27) must be included in petitioner's 1975 return as an installment payment as a result of the modification of the 1971 sales contract in 1975. ULTIMATE FINDING OF FACT Facts and circumstances surrounding the modification of petitioner's 1971 sales contract with Bristol Court reveral that the apartment complex sold by petitioner was taken subject to the mortgage by Bristol Court in 1975. OPINION Sections 453(a) and (b)[6] *242 *243 provide that income from the sale or other disposition of real property may be reported on the installment method, but only if *241 in the year of sale or other disposition there are no payments or payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. Installment sales of mortgaged property are addressed in section 1.453-4(c), Income Tax Regs. in the following manner: (c) Determination of "selling price". In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on *244 the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and §§ 1,453-1 through 1.453-7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. The term " payments" does not include amounts received by the vendor in the year of sale from the disposition to a third person of notes given by the vendee as part of the purchase price which are due and payable in subsequent years. Commissions and other selling expenses paid or incurred by the vendor shall not reduce the amount of the payments, the total contract price, or the selling price. A substantially similar regulation was held "not [to be] contrary to any positive provisions of the statute" by the Supreme Court in Burnet v. S.&L. Building Corporation, 288 U.S. 406, 415 (1933). Furthermore, by its terms, the regulation applies only where the mortgage is assumed or where property is taken subject to the mortgage by the purchaser. Maddox v. Commissioner, 69 T.C. 854, 858 (1978); Voight v. Commissioner, 68 T.C. 99, 109-110 (1977), affd. per curiam 614 F.2d 94 (5th Cir. 1980); *245 Stonecrest Corp. v. Commissioner, 24 T.C. 659, 666 (1955). Petitioner sold an apartment complex in 1971 pursuant to a "wrap-around" mortgage arrangement and properly elected to report the gain realized on the sale under the installment method of reporting provided by section 453(b). After the purchaser, Bristol Court, became delinquent in making payments to petitioner pursuant to the original sales contract, petitioner instituted foreclosure proceedings. A Taxes court issued a restraining order and alloted the purchaser a grace period within which to satisfy delinquent payments. After 2 years of an interim arrangement wherein the purchaser made court ordered payments directly to petitioner's mortgagee (and a much smaller payment to petitioner), in 1975 petitioner and Bristol Court modified the 1971 sales contract through an agreement which eventually resulted n the dismissal of the legal proceedings. This agreement, together with its attending facts and circumstances, form the basis of the controversy herein. The agreement provided that Bristol Court pay petitioner $ 105,000 cash plus interest and execute a $ 100,000 note to petitioner secured by a second lien deed of trust. *246 After the settlement, the balance due on the mortgage debt owed by petitioner to his mortgagee (Aetna) exceeded petitioner's basis in the apartment complex by some $ 283,237.27. The agreement between petitioner and Bristol Court does not address this mortgage debt. However, after the settlement the purchaser made all mortgage payments due Aetna directly to Ryan and petitioner was no longer involved in attending to his debt to Aetna. Respondent contends that despite the fact that no written assumption agreement was executed by the purchaser, the totality of the circumstances revolving around the 1975 settlement between petitioner and Bristol Court, leads to a conclusion that an assumption or a taking subject to the mortgage held by Aetna occurred in 1975. Thus, respondent argues that the excess of mortgage principal over petitioner's basis (e.g., $ 283,237.27) must be considered as a "payment" to petitioner in 1975. Petitioner asserts that as a result of the 1975 contract modification (1) there was no promise by the purchaser to petitioner that the purchaser would pay the mortgage debt of petitioner, (2) no agreement was made between the purchaser and the mortgagee that the debt *247 would be satisfied by the purchaser and (3) the petitioner remained liable to Aetna on his mortgage debt. Consequently, it is argued that the purchaser neither assumed the mortgage debt of petitioner nor took the property subject to that mortgage in 1975 and therefore the excess of mortgage principal over petitioner's basis in the apartment complex should not be considered a payment in 1975. Assuming, arguendo, that petitioner's three assertions noted above could be borne out by the facts in this case we still believe that the sale of petitioner's apartment complex to Bristol Court was subject to the mortgage held by Aetna. In Stonecrest Corp. v. Commissioner, supra, at 666, this Court elaborated on the factors which spell out a taking of property subject to a mortgage as follows: Taking property subject to a mortgage means that the buyer pays the seller for the latter's redemption interest, i.e., the difference between the amount of the mortgage debt and the total amount for which the property is being sold, but the buyer does not assume a personal obligation to pay the mortgage debt. The buyer agrees that as between him and the seller, the latter has no obligation to satisfy the *248 mortgage debt, and that the debt is to be satisfied out of the property. Although he is not obliged to, the buyer will ordinarily make the payments on the mortgage debt in order to protect his interest in the property. Thus, a transfer "subject to" a mortgage, refers to the relation between the parties to the transfer as regards the duty to satisfy the debt secured by the mortgage. "By taking a transfer of the land subject to the mortgage, the transferee concedes that, as between him and the transferor, the debt is to be satisfied out of the land, and that the transferor is not, as being personally liable for the debtor, under any obligation to pay it for the purpose of relieving the land in the transferee's hands." 5 Tiffany, Law of Real Property, sec. 1435, p. 364 (3d Ed. 1939). See Campbell v. Jones, 230 S.W. 710 (Civ. App. Tex. 1921). Furthermore, it s well settled that where there is no express reference to the mortgage in the transactional documents, the question of whether a taking subject to the mortgage was intended must be determined by reference to circumstances attending the transaction. [7] *249 5 Tiffany, supra. We have no doubt that a consideration of all the facts herein leads to the inescapable conclusion that Bristol Court took the property subject to its encumbrance. While there has been no express recitation in any document that the property was so taken, it is evident that the following factors, read together, provide the basis for a finding that Bristol Court purchased the apartment complex subject to the mortgage held by Aetna: (1) As a result of *250 the 1975 settlement, Bristol Court paid petitioner his redemption interest in the property. (2) Petitioner felt that his debt to Aetna could be satisfied from the value of the property. (3) Direct payments were made on the mortgage by purchaser to Aetna.
(4) After the 1975 settlement, mortgage loan records held by Ryan (Aetna's loan service agent) were charged to reflect the name of the purchaser. (5) Petitioner used the term "assumption" in correspondence. While not necessarily implying an actual assumption of the mortgage, the expression, at any very least, supports the notion that as between the petitioner and the purchaser, the petitioner's responsibility on the mortgage was vastly reduced or totally obliterated so that the debt, if necessary, could be satisfied out of the property. (6) Petitioner no longer deducted interest on his debt to the mortgagee since he did not make payments on his debt. (7) Petitioner rarely, if ever, had contact with the mortgagee or its loan service agent after the 1975 settlement. Petitioner relies on Stonecrest Corp. v. Commissioner, supra, to support his contention that the property was not taken subject to the mortgage. We think Stonecrest is *251 clearly distinguishable from the case at bar. In Stonecrest it was explicitly provided by the parties that the seller was to make payments on the mortgage debt but of the proceeds of the sale. Thus, it could not be said in that case that as beteen the seller any buyer, the seller had no obligation to pay the debt and that the debt was to be satisfied only out of the property. In the instant case, the buyer made the mortgage payments directly to the mortgagee, the petitioner seller had no contact with the mortgagee and by his own admission petitioner felt that upon default by the buyer the debt would be satisfied from the property. As noted above, the main thrust of petitioner's argument derives its strength from the following assertions: (1) There was no promise, express or implied, by the purchaser to petitioner that the purchaser would pay the mortgage debt of petitioner. (2) The purchaser made no promise to the mortgagee that the debt would be satisfied by the purchaser. (3) The petitioner remained liable to Aetna on his mortgage debt. Yet this argument does not address the "subject to" issue, for even if all of these assertions were true, we would be compelled to find only *252 that no assumption of the mortgage by the purchaser was intended. See Voight v. Commissioner, supra; Waldrep v. Commissioner, 52 T.C. 640 (1969), affd. 428 F.2d 1216 (5th Cir. 1970); Stonecrest v. Commissioner, supra. We reiterate that the major characteristic of a taking of property subject to a mortgage, is that as between the seller and buyer, the buyer concedes that the debt is to be satisfied out of the land. Thus, the fact that the seller still remains liable to the mortgagee does not preclude a finding that a sale to a third party is subject to an outstanding mortgage. Petitioner's sole argument in support of his contention that the purchaser did not take the property subject to the mortgage is that there was no agreement between petitioner-seller and the purchaser that the seller was no longer liable for the debt, and no understanding between them that the sole and only recourse for the mortgagee was to be the property itself. However, such an assertion is merely conclusory as it begs the precise question which is in issue herein. While there was no express reference to the mortgage in the 1975 settlement between petitioner and Bristol Court we have noted the list of facts *253 which unmistakenly guide us to the conclusion that petitioner and the purchaser intended that the apartment complex be taken by Bristol Court subject tothe mortgage. Therefore, we hold that for purposes of applying section 453, the excess of the mortgage principal over petitioner's unrecovered basis in the property at the time of the 1975 settlement (i.e., $ 283,237.27) should be considered a payment to petitioner in 1975. In view of this holding, we deem it unnecessary to address respondent's argument that the totality of circumstances surrounding the 1975 settlement between petitioner and Bristol Court reveals that the purchaser assumed the mortgage debt owed Aetna. [8]
Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Whitney-Bristol Court Properties was a limisted partnership whose general partners were T.J. Smith and the Whitney Properties Corporation. The Whitney Properties Corporation made the initial offer of purchase for the apartment complex on July 14, 1971.↩
3. The details as to the $ 54,650.41 reduction in the selling price of the apartment complex follows: ↩
Restructured Contract Pursuant to 1975 Agreement
1971 Sales Contract
Note
$ 1,650,000.00
Cash
$ 105,000.00
Note
100,000.00
Aetna
Mortgage
Balance
1,173,073.33
$ 1,650,000.00 $ 1,378,073.33
Total principal
paid by Bristol
Court under
1971 Contract
and under Texas
court order
of 1973
(217,276.26)
$ 1,432,723.74 Balance owed
petitioner
on 1971 contract
before its
restructure in
1975
$ 1,432,723.74
Selling price
pursuant to
1975 agreement
1,378,073.33
Net reduction
$ 54,650.41
in selling price
4. This gain was returned as ordinary income pursuant to section 1250. ↩
5. Modification of the original sales agreement did not constitute a disposition of the installment obligation within the meaning of section 453(d). See Cox v. Commissioner, 62 T.C. 247, 255 (1974); Jerpe v. Commissioner, 45 B.T.A. 199 (1941). See also Rev. Rul. 55-429, 1955-2 C.B. 252, as amplified by Rev. Rul. 72-570, 1972-2 C.B. 241. On his return, petitioner adjusted the section 453 computation and arrived at a gain of $ 21,457.26 as follows: Adjusted Sales Price (per settlement of
May 5, 1975)
$ 1,378,073.33 Less Basis in Property
Cost of Apartment
$ 1,374,998.62 Automobile
7,129.00 Expense of Sale
24,797.00 $ 1,406,924.62 Accumulated Depreciation
(382,160.00)
Basis of Property Sold (mathematical
error of $ 5 corrected)
1,024,764.62 Gain on Sale
353,308.71 Gain Reported Prior to 1975
76,961.96 Gain Remaining to be Reported
$ 276,346.75 Gross Profit Percentage * 20.05%
Payments received in 1975
107,018.78 Gain to be recognized in 1975
$ 21,457.26 * Petitioner has erroneously applied the gross profit percentage to the $ 2,018.78 of interest included in the 1975 payment.↩
6. SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property.-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. (2) Total contract price.--For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1). (b) Sales of Realty and Casual Sales of Personalty.-- (1) General Rule.--Income from-- (A) a sale or other disposition of real property, or (B) A casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $ 1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation.--Paragraph (1) shall apply-- (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if an the taxable year of the sale or other disposition-- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. (B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44 (b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44 (a) of such code. (3) Purchaser evidences of indebtedness payable on demand or readily tradable.--In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser.↩
7. Similarly, we have previously held that facts and circumstances attending a conveyance may disclose that a mortgage was assumed despite the absence of a formal promise of assumption by the purchaser. Voight v. Commissioner, 68 T.C. 99, 112 (1977), affd. per curiam 614 F.2d 94 (5th Cir. 1980); Waldrep v. Commissioner, 52 T.C. 640, 646 (1969), affd. 428 F.2d 1216 (5th Cir. 1970). While both of these cases dealt principally with an assumption of a mortgage and resulted in a finding that the mortgage was assumed at the time of the original sale↩, we find no meaningful distinction between them and the case herein where we have addressed ourselves to a taking subject to the mortgage as a result of a court approved settlement between the seller and buyer modifying a contract of sale executed in a prior year.
8. Compare Voight v. Commissioner, supra, and Waldrep v. Commissioner, supra, with United Pacific Corp. v. Commissioner, 39 T.C. 721 (1963) and Stonecrest v. Commissioner, 24 T.C. 659↩ (1955).