James B. DUNIGAN, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

Sally I. DUNIGAN, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 28993.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1970.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., William W. Guild, Daniel B. Rosenbaum, Atty., Tax Div., U. S. Dept. of Justice, Fort Worth, Tex., Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Daniel B. Rosenbaum, Atty., Dept. of Justice, Washington, D. C., defendant-appellant.

Whitfield J. Collins, William L. Hughes, Jr., Harry E. Bartel, Fort Worth, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH, and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge.

James B. Dunigan and Sally I. Dunigan seek refund of certain gift taxes assessed against them and paid the Commissioner of Internal Revenue. Both are named as plaintiffs because they elected to split their gifts for gift tax purposes in the year 1961. The taxes were on amounts that the Commissioner determined to be gifts to certain trusts created by James B. Dunigan in 1961 and from which he received annuity contracts. The taxes were collected in 1967. Taxpayers timely filed claims for refund, with interest. The Commissioner disallowed in full their claims and Taxpayers filed suit in the District Court for a refund of such taxes and interest. The suit alleged that the Commissioner's determination as to the amount due was erroneous in that his requiring the use of Table I set forth in § 25.2512–5(f) of the Gift Tax Regulations as the sole basis for valuing the private annuity con-

tracts was arbitrary, unreasonable, and erroneous. The jury returned its verdict in the form of answers to special interrogatories and in favor of Taxpayers. The Court entered its judgment accordingly and the Commissioner appealed.

In 1961, James B. Dunigan (Taxpayer) created five trusts for the benefit of his wife and three children. During the same year Taxpayer and his wife created three additional trusts for the benefit of his children. On June 1, 1961, cash, oil and gas royalties and leasehold interests of the total value of $111,568.51 were transferred to the trusts by Taxpayer. This gift is not in issue in this case.

On July 1, 1961, Taxpayer *transferred* certain corporate stocks of the aggregate value of $642,946.92 to the eight trusts. In exchange for this transfer he received an annuity contract from each trust, providing in the aggregate for monthly annuities payable to Taxpayer of $5,000 per month or $60,000 per annum.

In making adjustments to the Taxpayer's gift tax liability for the year 1961, the Commissioner determined that the value of the annuity contracts received by Taxpayer should be determined for gift tax purposes by Table I set forth in § 25.2512–5(f) of the Gift Tax Regulations. Using this table the Commissioner determined that on the basis of Taxpayer's age (69) at the time of the exchange, and adjusting the annuity factor shown in such table for an annual annuity (8.1578) to take into consideration the monthly annuities provided in the annuity contracts here involved, the value of the annuity contracts received by Taxpayer was $497,250.54, which was $145,698.21 less than the fair market value of the securities transferred in exchange for the annuity contracts. The gift tax deficiencies assessed against Taxpayer resulted from the determination that Taxpayer made a gift of $145,698.21 when he exchanged the securities for the annuity contracts.

At trial the Judge posed the following three interrogatories to the jury, to which the jury replied in the affirmative.

## INTERROGATORY NO. 1

Do you find from a preponderance of the evidence that the transfer of corporate stocks by James B. Dunigan on July 1, 1961, to the eight trusts in exchange for private annuity contracts was a transaction which was bona fide, at arm's length, and free from any donative intent on the part of Mr. James B. Dunigan?

## INTERROGATORY NO. 2

Do you find from a preponderance of the evidence that it was arbitrary, unreasonable, and erroneous for the Commissioner to require the use of Table I set forth in Section 25.2512(f) of his Gift Tax Regulations, which is set forth below, as the sole basis for valuing the private annuity contracts issued by the trusts to James B. Dunigan on January 1, 1961?

## INTERROGATORY NO. 3

Do you find from a preponderance of the evidence that the value of the private annuity contracts issued by the trust to James B. Dunigan on July 1, 1961, was substantially equal in value to the securities which he transferred to such trusts in exchange for the annuities?

After the jury affirmatively answered the above interrogatories the Government moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied. In a memorandum order the Judge stated that, in the event the reviewing court should hold that Interrogatory No. 2 should not have been submitted to the jury, the District Court would have found as a matter of law that it was arbitrary, unreasonable, and erroneous for the Commissioner to require the use of Table I as the sole basis for valuing the

annuity contracts. The Government appeals.

The issue to be decided by this Court is whether or not the jury had before it sufficient evidence to support their verdict, rendered in the form of their affirmative answer to Interrogatory No. 2, that the required use by the Commissioner of his Table I as the sole means for valuing Taxpayers annuity contracts was arbitrary, unreasonable, and erroneous.

The jury as a matter of fact so found. The District Court agreed.

The Government argues that the determination by either the court or the jury was without basis because the Taxpayer's only proof consisted of testimony by Taxpayer's expert actuary, T. T. Chamberlain, that Table I valued the annuities at significantly lower values than did certain commercial annuity contracts issued by insurance companies.

■ The cost of commercial annuity contracts is not a valid singular basis for determining the value of a private annuity contract as in this instance. There are differences between the values and costs of commercial and private annuity contracts. Commercial issuers are restricted as to the types of investments they can make and to lower interest rates, whereas the private issuer may speculate more and obtain a higher return; commercial issuers' prices include a margin for profit and expenses called a "loading factor"; and commercial annuitants, as a general class, are wealthier and longer lived, therefore an annuity contract given a commercial annuitant would be of greater value than one issued a member of the general population.

The above factors operate to make the cost of a commercial annuity contract greater than the cost of private annuity contracts giving comparable periodic payments. Furthermore, insurance companies (issuers of commercial contracts) have far greater assets than those of most trusts, including the eight instant trusts, another factor which makes a

commercial annuity contract worth more than a private one because of the more positive certainty of payment. Because of these differences the Commissioner uses Table I to value private annuities rather than a table used by commercial life insurance companies.

Table I is a composite, general purpose, valuation table, based on a population mortality table compiled in 1939 by the Bureau of the Census.

Taxpayer offered testimony and records which established that he was a wealthy man, that at the time of the transaction in question he was in excellent physical condition for a man his age, and that his life expectancy was greater than that of a man his age as a member of the general population. Part of Taxpayer's contention was that he, as a private annuitant, should be classified with commercial annuitants in determining life expectancy and further that the use of Table I when applied to him was erroneous since Table I was based on the mortality of the general population. It made no distinction as to a man of his particular wealth, physical condition, and longer life expectancy. Had this been the only evidence offered by Taxpayer, he would fall squarely within the cases cited below and could not prevail in this Court.

In Dix v. Commissioner, 4 Cir., 1968, 392 F.2d 313, the taxpayers received corporate stock from their mother and in exchange promised to pay her an annuity. The taxpayers sold some of the stock and their income tax liability depended on how much they paid for the stock, i.e., the value of the annuity. The Court upheld the Commissioner's use of Table I in his valuation of the annuity but did so on the basis that Dix put on no proof that showed the required use of Table I to be arbitrary and unreasonable. The only proof offered by Dix was that Table I differed from certain tables used by insurance firms in issuing commercial annuities. The Government in *Dix* had an expert witness testify in support of the use of Table I and as to several distinctions between private and

commercial annuities which made the use of the same life expectancy table for valuing the two different kinds of annuities questionable. The taxpayers attempted to refute this testimony by arguing that the witness' testimony constituted a "series of conclusions". The Court rejected that argument, stating in part:

> "This argument is unpersuasive, because * * * taxpayers have introduced no evidence to the contrary."

The taxpayers in *Dix*, like the taxpayers here, also argued that their mother, the recipient of the annuity contract, should be attributed a life expectancy as great as that attributed to purchasers of commercial annuity contracts. The Court rejected this argument, stating that some further evidence would be required before taxpayers' mother could be attributed a life expectancy above that of the average person.

In the instant case, however, Taxpayer introduced substantial evidence to satisfy and overcome his burden of proving that Table I, when applied to his case, was arbitrary and erroneous.

An actuarial witness for Taxpayer, T. T. Chamberlain, testified that:

(1) Table I is outmoded, as it is based on obsolete experience data from the 1940 census.

(2) The use of Table I would be erroneous since it is a composite, general population table and that the information possessed by the Commissioner regarding the Taxpayer made such a table's use inappropriate.

(3) Other life expectancy tables, i.e., "The Progressive Annuity Table", were more appropriate than Commissioner's Table I in determining the value of Taxpayer's private annuity contracts.

(4) "The Progressive Annuity Table" was based on considerably more recent experience data and it recognized the shortcomings of a general population table by eliminating hazardous occupations and by differentiating on the basis of sex.

(5) The several differences between commercial and private annuities were not a sufficient justification for requiring the use of Table I if the annuitant's personal characteristics more closely matched the characteristics of commercial annuitants, since an appropriate adjustment could be made for the other differences between a commercial and private annuity contract by utilizing a conservative interest figure in conjunction with the mortality table.

(6) The use of Table I in valuing Taxpayer's annuity contracts was arbitrary and erroneous and that some other available table based on the updated experience data of purchasers of commercial annuity contracts, was more appropriate when coupled with the use of a conservative interest factor, which factor provided sufficient adjustment in this particular case for the fact that Taxpayers contracts were not issued by a commercial company.

On cross examination of Norman Greenburg, the Government's expert actuary, the Taxpayer established that the Commissioner used different tables for valuing certain annuities for varying tax purposes. Taxpayer then asserts in his brief that this is evidence that may have been considered by the jury in its verdict, for if the Commissioner is able to choose which table he can use in certain tax situations then a taxpayer should likewise have the right to establish by proper proof that the prescribed table is not the proper exclusive basis for valuing his annuity contract.

Other testimony and records established that the Taxpayer was a wealthy man and that at the time of the transaction in question he was in excellent physical condition for a man his age.

896

■ Possibly none of the above evidence, standing alone, would require affirmance in this case. However, all of it considered together is sufficient to refute the contention that the verdict was without substantial support in the evidence submitted and considered.

The Government cites two other cases in support of its position, McMurtry v. Commissioner, 1 Cir., 1953, 203 F.2d 659, and Bowden v. Commissioner, 5 Cir., 1956, 234 F.2d 937, cert. denied, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123 (1956). In both of these cases the courts upheld the Government's valuation of certain taxable transactions. However, in both of these cases the courts opined that the taxpayer had not sustained his burden of proof. In McMurtry the only evidence introduced by the taxpayer was for the proposition that the Commissioner's evaluation table was based on obsolete experience data. The Court, in rejecting the taxpayer's method of valuation stated:

"It seems clear that this method of calculation used by petitioner was improper since there is a 'loading factor' (representing the company's commissions and other expenses) included in every commercial insurance company's premiums. It was also improper since the lower interest rates used by most of these insurance companies are largely due to the fact that their investments are usually considerably restricted by state law."

While this case may be authority to disallow certain taxpayers' claims when the taxpayer is contending only that the Commissioner's method is outdated, it is not precedent for allowing the Commissioner to use his Table I in any case no matter how great the weight of the evidence showing the inappropriateness of its use.

In Bowden this Court determined that the taxpayer had not sustained his burden of proving that a deficiency determined by the Commissioner was wrong, when he attempted to refute the use of the Commissioner's table simply by showing that the cost of a commercial annuity contract was higher than the value indicated by the Commissioner's table. In referring to McMurtry in Bowden this Court stated:

"We do not hold that the tables have, by reason of long standing and frequent application, attained the dignity of law * * *" but that "the determination of a deficiency by the Commissioner is prima facie correct and the burden is on the taxpayer to prove it wrong."

Hence, a mere showing that commercial annuities are valued higher than private ones by the Commissioner would not have been sufficient to sustain a finding favorable to taxpayer Dunigan. However, Dunigan, unlike the taxpayers in McMurtry, Bowden, and Dix has presented evidence, accepted by both the jury and the trial court, sufficient to sustain the burden of proof and to provide a basis for the jury's finding and District Court's determination.

The Commissioner's Table I has not "attained the dignity of law". However, it is hard to imagine a case in which the table would not be as law if it should be upheld in this instance.

Taxpayer and the Government both argue their respective views as to whether or not the transfer of the securities to the trusts was an arm's length transaction, i.e., a gift. We find it unnecessary to decide this question as the above opinion on the issue of the appropriateness of the jury finding as to the use of Table I is dispositive of this case.

The judgment of the District Court is Affirmed.

AINSWORTH, Circuit Judge (dissenting):

I would hold that the District Court erred in denying the Government's motion for judgment notwithstanding the verdict. The Government correctly employed Actuarial Table I of the Gift Tax Regulations (1954 Code), § 25.-2512-5(f), which is the applicable table for computing the value of private annu-

ities such as are involved here. On the other hand, taxpayer arrived at his value by using an average of the high and the low of seven or eight quotations received from commercial insurance companies which sell annuities. Taxpayer thereby failed as a matter of law in his burden of proving that the Commissioner's use of Table I was arbitrary, unreasonable, and erroneous. Cf. Bowden v. Commissioner of Internal Revenue, 5 Cir., 1956, 234 F.2d 937, cert. denied, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123 (1956); Dix v. C. I. R., 4 Cir., 1968, 392 F.2d 313; McMurtry v. Commissioner of Internal Revenue, 1 Cir., 1953, 203 F.2d 659; Koshland's Estate v. Commissioner of Internal Revenue, 9 Cir., 1949, 177 F.2d 851, where each circuit court involved upheld the use of Table I for the valuation of private annuities and rejected valuations of commercial insurance companies, under the circumstances of those cases which are similar to those here.

I, therefore, dissent.