443 F.2d 116
 71-1 USTC P 12,776
 The MIAMI BEACH FIRST NATIONAL BANK and Marion Adler, as
Administrator, C.T.A. and Executrix, respectively,
under the Will of Edgar Adler, deceased,
Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 30977.
 United States Court of Appeals, Fifth Circuit.
 May 5, 1971, Rehearing Denied June 1, 1971.
 
 Robert W. Rust, U.S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Atty., Gary Allen, Atty., Tax Div., Dept of Justice, Washington, D.C., Clemens Hagglund, Asst. U.S. Atty., Miami, Fla., for defendant-appellant.
 William Archie Brown, Miami Beach, Fla., for plaintiffs-appellees.
 Before WISDOM, BELL and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This action is for refund of federal estate tax in the amount of $115,124.98 plus interest. The Government appeals from a judgment in favor of Taxpayers, The Miami Beach First National Bank as Administrator, C.T.A., and Marion Adler, Executrix (referred to herein collectively as 'Taxpayer'), under the will of Edgar Adler, deceased. We reverse.
 
 
 2
 The last will and testament of Edgar Adler, decedent, provided a bequest of his residuary estate in trust for the benefit of Marion Adler, his widow, during her life. The remainder was left to certain charitable organizations. Decedent died on December 23, 1963. Thereafter Taxpayer filed an estate tax return in which a claim for a charitable deduction for the remainder interest was made. The Commissioner determined that the estate was not entitled to the charitable deduction and assessed additional taxes which were subsequently paid by Taxpayer. Taxpayer then filed this action for a refund thereof.
 
 
 3
 The parties agree that the only issue on appeal is whether the District Court erred in valuing a charitable remainder, for federal estate tax purposes, on the basis of medical testimony as to the life income beneficiary's probable life expectancy rather than on the basis of the actuarial table provided for this purpose by the Treasury Regulations.
 
 
 4
 There was conflicting medical evidence presented at the trial in regard to an estimate of the life expectancy of Mrs. Marion Adler based on her state of health on the date of her husband's death. Two physicians who had treated Mrs. Adler testified. Dr. Rand, called by Taxpayer, said that the prognosis of her life expectancy was four to five years. He based this on insurance statistics and clinical experience, as well as his clinical evaluation of her condition. However, he said she had no evidence of any terminal illness. On the other hand, Dr. Horsley, whose deposition was offered by the Government, said that he did not think it possible to render an accurate medical opinion of Mrs. Adler's life expectancy, and that it would appear to him to be impossible for any physician knowing her history and medical circumstances to offer either a minimum or maximum prognosis of life expectancy of any accuracy. He testified, however, that he did not feel that her life expectancy was normal-- that is, as compared to a 70-year-old female who is free of diagnosable disease. Nevertheless, the District Court found that Mrs. Adler's life expectancy was five years.[1] This five-year factor was used in determining the value of the remainder interest to charity, the District Court having found that such an interest 'may be based upon the health of the life tenant at the date of the decedent's death, rather than by the exclusive use of mortality tables.' The Government contends that the Court erred in departing from the official valuation table in computing the allowable deduction.
 
 
 5
 The pertinent Treasury Regulations applicable to evaluating charitable remainder interests for purposes of Federal Estate Tax are contained in Sections 20.2031-7(a), (f) and 20.2055-2(a), 26 Code of Federal Regulations. Section 20.2055-2(a) provides in part that' if a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.' Section 20.2031-7(a) provides that the present value of a remainder which is dependent on the continuation or termination of the life of one person is computed by the use of Table I. The value of a remainder dependent upon a term certain is computed by the use of Table II. (Tables I and II are found under subparagraph (f) of this Section.)[2] The Section further provides that the age to be used is that of the nearest birthday.
 
 
 6
 The age of Mrs. Adler at the death of her husband was, as the Court found, 71 years. Applying this age factor to Table I, the value of the remainder would be .73795 or approximately 74 per cent of the total value of the property left in trust at the time of decedent's death. It was stipulated by the parties that if Table I did not apply Table II would be used for evaluating the charitable remainder. Table II shows a value factor of .841973 for a charitable remainder postponed for a term of five years (the life expectancy of Mrs. Adler as determined by the District Court) or a value of approximately 84 per cent of the trust estate.
 
 
 7
 The use of Treasury Department actuarial tables for the purpose of determining the present value of future contingent interests in property has been for many years recognized and approved by the Supreme Court. See Simpson v. United States, 252 U.S. 547, 550, 40 S.Ct. 367, 368, 64 L.Ed. 709 (1920). In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the Supreme Court approved the use of Treasury Department mortality tables in a situation analogous to the present one. There a testator created a trust, giving the residue of his estate to his wife for life with authority to use from the principal sufficient funds to maintain herself. Upon her death he provided for bequests in trust for certain charities. The widow died six months after decedent's death. The Supreme Court held that the value of the charitable gifts was to be determined by mortality tables showing the probabilities as they stood on the day the testator died, despite the fact that the 'uncertain probabilities' had been resolved by the 'certain fact' of the widow's death. The Court said, 'Like all values, as the word is used by the law, it (the value of property) depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false than when it comes out true.' 279 U.S. at 155, 49 S.Ct. at 291, 292.
 
 
 8
 The Treasury Regulations and the actuarial tables prescribed thereunder afford a reasonable norm and some degree of certainty in ascertaining the value of property and the consequent tax liabilities of beneficiaries thereof. We recognized the practicality of using the Treasury Regulations formula for computations in the recent case of Estate of Wien, et al. v. Commissioner of Internal Revenue, 5 Cir., 1971, 441 F.2d 32, where we observed that the use of a similar regulation (Section 20.2031-8) 'has relieved us of the burden of calculating' such imponderables. The First Circuit likewise commented on the feasibility of using Treasury actuarial tables in McMurtry v. Commissioner of Internal Revenue, 1953, 203, F.2d 659, 667, in which it noted that 'Tables which have enjoyed such widespread and long-standing use should not be rejected as wholly unreasonable, even though they may perhaps be susceptible of minor improvements in particular respects. Such discrepancies as may exist will no doubt average out in the long run; and while this may sometimes prove to be unfortunate for individual taxpayers, the discrepancies may have to be suffered in the interest of a simplified overall administration of the tax laws.'
 
 
 9
 We agree with Taxpayer's contention that where there is sufficient evidence regarding the actual life expectancy of a life tenant, the presumptive correctness of the Treasury tables will be overcome.[3] Indeed the Regulations anticipate this contingency. Section 20.2031-1(b) concerning valuation of estates provides in part that 'all relevant facts and elements of value as of the applicable valuation date shall be considered in every case.' Taxpayer, however, has not furnished evidence adequate to overcome the presumptive correctness of the applicable table. Although the exclusive use of the mortuary tables is not required under all circumstances,[4] the Regulations are entitled to great weight and the method for valuing deferred interests chosen by the Commissioner may not be disregarded unless unreasonable. See Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Dunigan v. United States of America, 5 Cir., 1970, 434 F.2d 892; Ruehlmann v. C.I.R., 6 Cir., 1969, 418 F.2d 1302; Howell v. United States, 7 Cir., 1969, 414 F.2d 45.
 
 
 10
 In Bowden v. Commissioner of Internal Revenue, 5 Cir., 1956, 234 F.2d 937, taxpayer, as here, sought to avoid the application of annuity tables incorporated in the Regulations. Although we recognized that the tables had not 'attained the dignity and force of law' and that the 'correctness of actuarial data might be shown to be erroneous' under certain circumstances, we followed the general rule of law that in the absence of proof to the contrary, the Commissioner's determination of a deficiency is prima facie correct, and the burden is on the taxpayer to prove otherwise. 234 F.2d at 942. It is only where the established facts are sufficient to justify a departure from the Regulations that exceptions are allowed. Such exceptions have been recognized, for instance, where the death of a life tenant is imminent or predictable. See, for example, Estate of Nellie H. Jennings, 10 T.C. 323 (1948), where at the time of decedent's death the life tenant, who died two months thereafter, was helpless, with complete loss of memory, and almost total paralysis as the result of a cerebral attack; or, Estate of John P. Hoelzel, 28 T.C. 384 (1957), where the beneficiary at the time of decedent's death was suffering from an incurable and inoperable cancer of the lung and her surgeon and physician were both of the opinion that she would die within a year. In such exceptional cases, the value of a remainder interest may be determined with reference to the actual physical condition of the beneficiary on the date of decedent's death rather than by the exclusive use of the established mortality tables. See Revenue Ruling 66307, 1966-2 Cum.Bull., p. 429. This, however, is not such a case.
 
 
 11
 It is not apparent from the medical evidence that Mrs. Adler's death was either predictable or imminent. While she was afflicted with a number of serious and chronic medical conditions at the time of her husband's death, none of these afflictions had advanced to a terminal stage. As the Government points out in its brief, Mrs. Adler had already in fact outlived by more than two years the estimated five-year life expectancy determined by the District Court. Under the circumstances, it was improper for the District Court to value the charitable remainder interest on the highly speculative testimony. Instead, the Court should have applied the table provided by the Regulations, which necessarily deals with probabilities but is applicable indiscriminately to all individuals, and incorporates in its statistics the fortuities of premature death as well as longevity.
 
 
 12
 Reversed.
 
 
 
 [1]
 According to the medical evidence, on December 23, 1963, Mrs. Adler was suffering from numerous medical ailments, including rheumatic heart disease, with enlarged heart, mitral stenosis, aortic insufficienty, paroxymal auricular fibrillations, and congestive heart failure; arteriosclerotic cardiovascular disease; chronic bronchitis; hypothyroidism; rheumatoid arthritis; osteoporosis; mild Parkinson's disease; intermittent cerebral vascular insufficiency
 
 
 [2]
 Table I shows the present value factors of an annuity, life estate and remainder, at an individual's age from 0 to 105, respectively. It is derived from Table 38 of the United States Life Tables and Actuarial Tables which reflect national mortality statistics. Table II sets out present value factors for a term certain of an annuity, an income interest and a remainder interest dependent upon an estate of definite duration. The statutory foundation for the tables is 26 U.S.C. 7805(a) which authorizes the issuance of 'all needful rules and regulations' for the enforcement of the Internal Revenue Code
 
 
 [3]
 See Dunigan v. U.S.A., 5 Cir., 1970, 434 F.2d 892; Hall v. United States, 7 Cir., 1965, 353 F.2d 500; Estate of Nellie H. Jennings, 10 T.C. 323 (1948); Estate of John P. Hoelzel, 28 T.C. 384 (1957)
 In Dunigan taxpayer offered testimony that he was a wealthy man and in excellent physical condition for a man of his age and that his life expectancy was greater than that of the general population.
 He contended, therefore, that the table would be inapplicable to him. As to this testimony, the Court said, 'Had this been the only evidence offered by Taxpayer, he would fall squarely within the cases cited below and could not prevail in this Court.' 434 F.2d at 894. Additional testimony of an expert actuary was offered by taxpayer, however, that in valuing the annuity contracts involved the table was statistically outmoded when compared with commercial annuity life expectancy tables, and that taxpayer should, accordingly, be classified with commercial annuitants. It was because of the special circumstances of the case, therefore, that a departure from the table was permitted in Dunigan, and the jury verdict in favor of taxpayer was sustained as having substantial evidentiary support.
 
 
 [4]
 See n. 3, supra