ESTHER LAFARGUE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Fargue v. Commissioner
Docket Nos. 5629-75, 6259-77.
United States Tax Court
T.C. Memo 1985-90; 1985 Tax Ct. Memo LEXIS 542; 49 T.C.M. (CCH) 839; T.C.M. (RIA) 85090; February 27, 1985. Harry Margolis, for the petitioner. David L. Denier, for the respondent. TANNENWALD
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: This case is again before us, this time on remand from *544 the United States Court of Appeals for the Ninth Circuit. In our earlier opinion, we held that the transactions in question did not constitute a sale or exchange for an annuity but a transfer in trust, with the result that the $16,502 annual payment received by petitioner from the trustees was includable in her gross income under sections 677 and 671 [1] to the extent of the lesser of the gross income of the trust or the annual payment, rather than taxable as an annuity under section 72. LaFargue v. Commissioner,73 T.C. 40 (1979). On appeal, the Ninth Circuit Court of Appeals concluded that petitioner had transferred her property to the trust in exchange for an annuity of $16,502 annually, and that the taxability of this sum should be determined under section 72; it therefore reversed our holding and remanded the case for the Court to make that determination. LaFargue v. Commissioner,689 F.2d 845 (9th Cir. 1982). The scope of the remand was set forth by the Ninth Circuit Court of Appeals as follows (see 689 F.2d at 847 n.3): The Commissioner did not assess a gift tax deficiency, 73 T.C. at 52 n.8; therefore the gift *545 tax ramifications of the transaction were not before the Tax Court. Nevertheless, on remand, the Tax Court may consider the income tax ramifications of the fact that no discount factor was used in the calculation of the annuity and the Commissioner's argument that the value of property transferred was therefore greater than the actuarial value of the annuity received in exchange. Basically, the Commissioner's argument that the transfer was part sale and part gift must be considered at two stages. First, it may be pertinent to determining the amount of any gain or loss realized on the transfer of the various properties, since a gift component may require an allocation of part of the taxpayer's basis in the property to the gift component of the transfer. Second, a gift component may affect the application of I.R.C. § 72 to the annuity payments received by Taxpayer. See 212 Corporation v. Commissioner,70 T.C. 788, 797-98 (1978); Estate of Bell v. Commissioner,60 T.C. 469 (1973). Of course, if the Tax Court deals with these issues, it must also consider Taxpayer's fundamental contention that, since the annuity contract *546 was unsecured, she will realize no gain on the sale until she has recovered her basis. See 73 T.C. at 51, and cases cited therein. See generally Estate of Bell v. Commissioner,60 T.C. at 475, 476-80 (dissent); Lloyd v. Commissioner,33 B.T.A. 903 (1936); see also, Burnet v. Logan,283 U.S. 404, 51 S. Ct. 550, 75 L.Ed. 1143 (1931). We have not considered any of these issues and express no opinion on them. Both parties have set forth detailed findings for us to make on remand, many of which deal with the nature of the underlying transactions and are repetitious of the findings we made in our prior opinion (LaFargue v. Commissioner,supra). We see no need to comply with all the parties' requests and make this opinion longer than necessary. We incorporate herein the detailed findings in our prior opinion, including all stipulated facts (whether or not specifically found), none of which was disturbed *547 by the Ninth Circuit Court of Appeals; its disagreement was with the conclusions we drew from these facts. We will, however, set forth those factual findings which we believe are necessary to the determination we are called upon to make. On or about February 12, 1971, petitioner entered into an "Annuity Agreement" with the trustees of a trust established by her on February 10, 1971. Pursuant to that agreement, petitioner conveyed to the trustees assets having an aggregate fair market value of $335,000 and a basis to petitioner of $320,541. The provisions of the annuity agreement pertinent to our determination herein are as follows: 2. The sole consideration for the transfer of the above described assets by LAFARGUE is the annuity for them. There is no independent security for the payment of the annuity. TRUSTEES agree to pay LAFARGUE the sum of Sixteen thousand Five Hundred and Two Dollars ($16,502.00) annually commencing on June 1, 1971, and thereafter on the 1st day of June and each succeeding year for the remainder of LAFARGUE's life. The calculation of this amount is shown in Paragraph 2 of Exhibit "B". All amounts due to LAFARGUE shall cease to be paid upon her death. *548 3. The parties to this agreement recognize that there are alternative methods available to accomplish their objectives. These methods have been very seriously considered by the parties and this annuity agreement, providing for the annuity to LAFARGUE, has been expressly chosen by LAFARGUE as personally preferable to her. While life expectancy tables and interest tables were consulted, they have not been the sole factors in deciding upon entering into this agreement. LAFARGUE and TRUSTEES have expressly agreed that no interest factor should be involved in this annuity agreement but do, however, recognize the possibility that the Congress of the United States may, at some time, require an interest factor by statute. The parties, therefore, agree that all payments of annuities made under this agreement shall, for the first ten (10) years, be principal only with the understanding that any interest factor required by law shall then be one half (1/2) of the next ten payments until such interest shall have been brought current with one half (1/2) each such payment from the 11th continuing to be principal. TRUSTEES shall have twelve (12) months after the final determination by court *549 of competent jurisdiction or after acceptance of statutory enactment by the TRUSTEES in which to exercise the option to rescind this agreement on the basis of failure of consideration. Should TRUSTEES determine that such option should be exercised, TRUSTEES shall return to LAFARGUE in the best possible form all assets transferred in consideration for this annuity or cash in the value equal to the interest of LAFARGUE as then valued under this annuity and the rights and obligations of the parties shall come to an end effective on the delivery of such property or cash and the rescission of this agreement.If TRUSTEES exercise this option, LAFARGUE may void the exercise of the option by agreeing to make a gift to TRUSTEES of the total amount of the interest then due and continue to make gifts of the interest as due from year to year provided further that LAFARGUE shall pay any gift tax. * * * 5.In executing this annuity agreement and consummating the assignment of the assets referred to hereunder, the parties do not intend that any gift be made by TRUSTEES to LAFARGUE or to any other person or party and the parties do not intend that any gift be made by LAFARGUE to TRUSTEES or any *550 other person or party. The parties have agreed that each of them is respectively receiving full market value under the terms of this agreement. On February 12, 1971, petitioner was 62 years of age and had a life expectancy of 20.3 years. Her expected return from the annuity was $335,000, i.e., $16,502 times 20.3. See sec. 1.72-5(a)(1), Income Tax Regs. At that time, the present worth of an annuity of $16,502 purchased for a female age 62, as determined under section 20.2031-10(f), Income Tax Regs., was $176,990. [2] The present worth of such an annuity purchased as a commercial annuity was $253,515. *551 The principal issue on remand is the proper measure of the "exclusion ratio," provided for in section 72(b), in respect of the annuity which petitioner purchased from the trustees. The application of the "exclusion ratio" will determine what portion of the $16,502 received by petitioner in each of the taxable years before us in payment of the annuity which, pursuant to the holding of the Ninth Circuit Court of Appeals, she purchased from the trustees on February 12, 1971, must be included in her income for those years under section 72(a). [3] Determination of the "exclusion ratio" in turn depends upon the amount of petitioner's "investment in the [annuity] contract" within the meaning of section 72(b). *552 Respondent contends that petitioner's transfer of assets to the trustees was part sale and part gift in that the present value of the annuity at that time was $176,990, and that only this amount should be considered as petitioner's "investment in the [annuity] contract" under section 72(b); thus, the "exclusion ratio" is 52.8 percent ($176,990/$335,000), [4] and 47.2 percent of $16,502 (or $7,788.94) should be included in petitioner's gross income for each of the years involved herein. Petitioner contends that no part of the $335,000 fair market value of the assets used by her to purchase the annuity constitutes a gift, because (1) she did not intend to make a gift; (2) neither she nor the trustees took any interest (discount) factor into account in determining the amount to be paid for the annuity; (3) section 72 does not require any discount factor to be taken into account; and (4) under these circumstances, it would be improper for this Court to impose a discount factor. Consequently, petitioner argues that her "investment in the [annuity] contract" is the full $335,000; that, since her expected return was the same amount, the proper "exclusion ratio" under section 72(b) *553 is 100 percent; and thus no part of the $16,502 annual payment should be included in her gross income pursuant to section 72(a). For the reasons hereinafter set forth, we agree with respondent. The precise question posed herein was before this Court in Benson v. Commissioner,80 T.C. 789 (1983). In that case, an almost identical arrangement was involved. After holding that, in light of the holding of the Ninth Circuit Court of Appeals in LaFargue v. Commissioner,supra, and the constraint of Golsen v. Commissioner,54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), the payments in question were bona fide annuity payments (see 80 T.C. at 799), we went on to hold that the taxpayer's "investment in the contract" under section 72(b) was the actuarial value of the annuity and not the fair market value of the assets transferred to exchange for the annuity, and that the excess of such fair market value over such actuarial value constituted a gift (see 80 T.C. at 800, 803). *554 See also 212 Corporation v. Commissioner,70 T.C. 788, 798 (1978); Estate of Bell v. Commissioner,60 T.C. 469, 473 (1973). In Benson, the annuity agreement recited that the taxpayer intended no gift to the trust, but we were not persuaded that this recitation should produce a contrary result. See 80 T.C. at 803 n.7. We follow the same path herein, and hold that the excess of the fair market value of the assets transferred to the trust by petitioner ($335,000) over the actuarial value of the annuity promised her in return ($176,990) constitutes a gift. We are not impressed by the fact that paragraph 3 of the annuity agreement states that petitioner and the trustees "have expressly agreed that no interest factor should be involved in this annuity agreement" (see supra p. 4). In order to decide whether petitioner made a gift to the trust with part of the transferred assets, we must compare the value of the annuity she purchased with that of the assets with which she parted. It is, however, the present values (as of February 12, 1971) that must be compared if such comparison is to be meaningful, and the calculation of *555 the present value of the stream of annuity payments requires the use of a discount factor. Section 72 requires the same computation for the purpose of determining the "investment in the contract"; otherwise, the exclusion ratio formula would not serve the purpose of prorating the return-of-capital element of the annuity payments over the life of the annuity in the proportion that the actual investment value of the payment stream bears to the aggregate payments. Thus, section 72 requires the use of an "interest factor," and parties to an annuity contract cannot bargain around this requirements. [5] Moreover, the foundations of Crown v. Commissioner,67 T.C. 1060 (1977), affd. 585 F.2d 234 (7th Cir. 1978), Dean v. Commissioner,35 T.C. 1083 (1961), and the latter's progeny, relied upon by petitioner in her original brief in this case as evidencing the unwillingness of the Court to adopt a judicial standard of imputed interest, have recently been swept away by the Supreme Court in Dickman v. Commissioner,104 S. Ct. 1086 (1984). *556 We hold that petitioner's "investment in the [annuity] contract" within the meaning of the phrase in *557 section 72(b) was $176,990, [6] and that accordingly $7,788.94 (i.e., 47.2 percent) of the $16,502 received by petitioner should be included in her gross income for each of the taxable years before us. In the initial proceeding herein, the parties devoted much attention to the issue of whether petitioner's 1971 transfer of assets in exchange for the payments to be made was an "open" or "closed" transaction. If the former, petitioner would realize no gain on the transfer (as distinguished from the taxability of a portion of each payment as an annuity under section 72) until she had recovered her basis in those assets, i.e., $320,541. If the latter, petitioner would realize immediate gain (or loss) at the time of the transfer. This is an issue which has occupied the attention of this Court and other courts, particularly in recent years, see, e.g., Garvey, Inc. v. United States,726 F.2d 1569 (Fed. Cir. 1984), affg. 1 Cl. Ct. 108 (1983); *558 Benson v. Commissioner,supra;212 Corporation v. Commissioner,supra; Estate of Bell v. Commissioner,supra.And it is an issue which the Ninth Circuit Court of Appeals believed we would need to consider in the remand. See LaFargue v. Commissioner,689 F.2d at 847 n.3 (set forth at pp. 2-3, supra). Had we sustained petitioner's contention herein that there was no gift element involved, we would have had to consider this issue since the amount which petitioner anticipated receiving, namely $335,000, is in excess of her basis in the assets. However, respondent has conceded that if his contention as to the presence of a gift element herein is sustained, petitioner realized a loss on the annuity transaction since the amount realized upon exchanging the property for the annuity does not exceed the adjusted basis in the property transferred -- a loss which is not deductible. See Benson v. Commissioner,supra at 803 n.8; sec. 1.1001-1(e)(2), example (2), Income Tax Regs. [7] Under these circumstances, we have no need to address the issue raised by this portion of the remand.
*559 We reject petitioner's suggestion that we should somehow condition our decision so that the trustees and petitioner would have the option to rescind the annuity agreement pursuant to paragraph 3 thereof (see supra pp. 4-5). We fail to see how a recission, if it were to occur, would affect petitioner's tax liability for the years at issue. During those years, petitioner had the unfettered right to receive monies pursuant to the trust agreement, and the fact that her right might subsequently be modified is irrelevant under the doctrine of North American Oil Consolidated v. Burnet,286 U.S. 417 (1932). See also Penn v. Robertson,115 F.2d 167 (4th Cir. 1940). In a similar fashion, we hold that the further provision of paragraph 3 of the annuity agreement (see supra p. 4) that allocates the first ten years of payments to principal cannot operate to obviate taxability of the payments received by petitioner during the taxable years at issue, a creatment that is mandated by the provisions of section 72, which we have held (not without petitioner's agreement) to be applicable. Finally, we take note of the fact that petitioner, in her briefs *560 on remand, mentions the possibility that United States v. Baggot,463 U.S. 476 (1983), and United States v. Sells Engineering, Inc.,463 U.S. 418 (1983), may have some applicability to the instant case. Leaving aside any consideration of the timeliness of petitioner's complaint on this score, we find it difficult, if not impossible, to visualize how petitioner, who won this case on appeal insofar as concerns the principal issue, could have any legitimate complaint. Certainly none of the information upon which the determination on remand has been made can, by the wildest stretch of imagination, be found to be "tainted," and, in any event, we have held that Baggot and Sells are generally not to be given retroactive effect. Kluger v. Commissioner,83 T.C. 309 (1984). Moreover, aside from a general allegation that "a careful review of the circumstances involved in the criminal trial of Harry Margolis and others indicates that LaFargue and the issues therein contained were presented to the Grand Jury prior to indictment," petitioner points to no specific Grand Jury information which might have been disclosed and improperly *561 utilized. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue. Any Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Because petitioner does not assert, much less prove, that respondent's use of the actuarial tables found in sec. 20.2031-10(f), Income Tax Regs., is erroneous in terms of actual life expectancies or discount rates--indeed, she contends only that her annuity was worth the full $335,000--we accept as correct the application of such tables to petitioner's annuity. See Bank of California v. United States,672 F.2d 758, 759 (9th Cir. 1982); Estate of Christ v. Commissioner,480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970); Dunigan v. United States,434 F.2d 892 (5th Cir. 1970); Estate of Bell v. Commissioner,60 T.C. 469, 474 (1973). Respondent purports to have used "Life Table LN contained in Treas. Reg. sec. 20.2031-10(f)" to arrive at the $176,990 figure. At the original trial of the instant case, respondent's expert actuarial witness testified that he calculated the present worth under the tables found in sec. 20.2031-10(f), Income Tax Regs., of the annuity in issue to be $176,990, but while mentioning Table LN, did not specifically state which of the tables he used. Petitioner has not objected to respondent's calculation of the present worth of the annuity. Under these circumstances, we have used respondent's figure. We note, however, that application of sec. 20.2031-10(f), Table A(2), Income Tax Regs., to the instant case would seem to result in a present value of $165,988.67 ($16,502 X 10.0587), and it is difficult to see how Table LN either applies (see sec. 20.2031-10(e), Income Tax Regs.↩) or changes this result.
3. Section 72(a) and (b) provide as follows-- (a) GENERAL RULE FOR ANNUITIES.--Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract. (b) EXCLUSION RATIO.--Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date). This subsection shall not apply to any amount to which subsection (d)(1) (relating to certain employee annuities) applies.↩
4. Petitioner and respondent are in agreement that the $335,000 figure represents petitioner's "expected return."↩
5. We note that nothing in sec. 483(f), cited by petitioner, points in a different direction, at least insofar as the instant case is concerned. Cf. Garvey Inc. v. United States,726 F.2d 1569, 1574 (Fed. Cir. 1984), affg. 1 Cl. Ct. 108, 126-128 (1983). Section 483 deals with imputed interest on deferred payments, and subsection (f)(5) provides-- (5) ANNUITIES -- This section shall not apply to any amount the liability for which depends in whole or in part on the life expectancy of one or more individuals and which constitutes an amount received as an annuity to which section 72 applies. This provision was removed by the Tax Reform Act of 1984, sec. 41(b), Pub. L. 98-369, 98 Stat. 553. Equally unimpressive is petitioner's argument based upon the legislative history connected with the enactment of section 1241, an argument which we dealt with in detail and rejected in Benson v. Commissioner,80 T.C. 789, 800-803↩ (1983).
6. Petitioner has not argued that the cost of a commercial annuity, namely $253,515, should be her "investment in the [annuity] contract." See 212 Corporation v. Commissioner,70 T.C. 788, 798-799↩ (1978).
7. Since petitioner could recover her basis in the assets transferred only by living out practically all of her life expectancy as of February 12, 1971, it would be difficult to conclude that the annuity transaction, even as she visualizes it, was a transaction entered into for profit. Indeed, petitioner has made no alternative contention that she should be allowed any loss.↩