T.C. Memo. 1996-307


UNITED STATES TAX COURT


ESTATE OF GORDON B. McLENDON, DECEASED, GORDON B.
MCLENDON, JR., INDEPENDENT EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent *

ESTATE OF GORDON B. MCLENDON, DECEASED, DONOR, GORDON B.
MCLENDON, JR., INDEPENDENT EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20324-90, 20325-90.          Filed July 8, 1996.


Anderson Wallace, Jr. and Joseph O. Collins, Jr., for

petitioner.

James W. Lessis and Henry C. Griego, for respondent.

_____

*This opinion supplements our opinion in T.C. Memo. 1993-
459.

SUPPLEMENTAL MEMORANDUM OPINION

HAMBLEN, Judge:  This matter is before the Court on remand
from the U.S. Court of Appeals for the Fifth Circuit.  Estate of
McLendon v. Commissioner, 77 F.3d 477 (5th Cir. 1995), revg. in
part and remanding without published opinion T.C. Memo. 1993-459.
All relevant findings of fact set forth in our prior Memorandum
Opinion in this case are incorporated herein by this reference.
(Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect on the date of Gordon B.
McLendon's death.  Rule references are to the Tax Court Rules of
Practice and Procedure.)

Background

Respondent determined that the Estate of Gordon B. McLendon
is liable for deficiencies in Federal gift and estate taxes
arising from a private annuity agreement that Gordon B. McLendon
(decedent) entered into on March 5, 1986, approximately 6 months
prior to his death from esophageal cancer.  The disputed private
annuity agreement was based on decedent's promise to transfer a
remainder interest in certain of his assets to his son and a
trust created for the benefit of his three daughters (the
obligors) in consideration for the obligors' promise to pay
decedent $250,000 at the time of the execution of the agreement
along with an additional amount to be paid to the decedent in the
form of an annuity.  The details of the private annuity agreement

are described in our prior Memorandum Opinion, and we see no need to recite them here.

Respondent determined a deficiency in petitioner's Federal gift tax after concluding that decedent did not receive full and adequate consideration for the remainder interest that he transferred pursuant to the private annuity agreement. In particular, respondent determined that petitioner: (1) Understated the value of the assets that were the subject of the private annuity agreement; and (2) erred in relying on section 25.2512-5(f) (Table A), Gift Tax Regs., to compute the value of the remainder interest transferred pursuant to the private annuity agreement. Consequently, respondent maintains that the private annuity agreement resulted in a transfer that was in part a sale and in part a gift.

After concessions by both parties, the dispute concerning the value of the assets that were the subject of the private annuity agreement was narrowed at trial to the question of whether property interests in two general partnerships that decedent transferred pursuant to the private annuity agreement should be valued as general partnership interests or as assignee interests in the two general partnerships. An additional contested issue concerned respondent's determination that petitioner erred in relying on the actuarial tables found in section 25.2512-5(f) (Table A), Gift Tax Regs., in computing the

value of the remainder interest in question on the ground that the known facts surrounding decedent's diagnosis and treatment for esophageal cancer demonstrate that decedent's death was imminent or predictable on March 5, 1986, thereby justifying a departure from the actuarial tables (under which decedent's actuarial life expectancy was 15 years).

In Estate of McLendon v. Commissioner, T.C. Memo. 1993-459, 66 TCM (CCH) 946, 963, 64 TCM (RIA) 2436, 2455 (slip op. at 51), we decided that the property interests in question should be valued as general partnership interests, as opposed to assignee interests, on the ground that the private annuity agreement amounted to "a device intended to permit Gordon to transfer his partnership interests to the natural objects of his bounty for less than adequate and full consideration."  In addition, we sustained respondent's determination that petitioner erred in relying on section 25.2512-5(f) (Table A), Gift Tax Regs., in computing the value of the remainder interest that decedent transferred pursuant to the private annuity agreement in light of decedent's diminished life expectancy on the date that he entered into the agreement.  Estate of McLendon v. Commissioner, T.C. Memo. 1993-459, 66 TCM (CCH) at 968, 64 TCM (RIA) at 2460 (slip op. at 70).

Upon review of our Memorandum Opinion, the Court of Appeals for the Fifth Circuit issued an unpublished opinion reversing in

part and remanding the case to this Court. In particular, the Court of Appeals reversed our decision that the property interests transferred by decedent should be valued as partnership interests after concluding that we failed to characterize the annuity transaction as a "contrivance to avoid estate taxes" or a "sham". Estate of McLendon v. Commissioner, 77 F.3d 477 (5th Cir. 1995), revg. in part and remanding without published opinion T.C. Memo. 1993-459 (slip op. at 17-18). Further, the Court of Appeals remanded the case to this Court with instructions to explain our holding sustaining respondent's determination that petitioner improperly relied upon the actuarial tables under section 25.2512-5(f) (Table A), Gift Tax Regs., in computing the value of the remainder interest that decedent transferred pursuant to the private annuity agreement. The Court of Appeals' opinion states in pertinent part:

> Although the Tax Court purported to compare Gordon's health as of March, 1986 with that of parties in other cases, e.g. in [Estate of Jennings v. Commissioner, 10 T.C. 323 (1948) and Estate of Hoelzel v. Commissioner, 28 T.C. 384, 389 (1957)], we are unable to discern whether the Tax Court followed Revenue Ruling 80-80, [1980-1 C.B. 194] or found reason to depart from it. The Tax Court's opinion is both ambiguous and ambivalent regarding the revenue ruling, as it holds that Gordon had a life expectancy of one year, a finding that would suggest to us under the express language of the revenue ruling that death was not clearly imminent. We must remand for the court to clarify its conclusion with regard to the applicability of Revenue Ruling 80-80 so that we will have a sounder basis for appellate review. [Estate of McLendon v. Commissioner, 77 F.3d at 477 (slip. op. at 24).]

Discussion

Section 25.2512-5, Gift Tax Regs., provides actuarial tables to be used in computing the present value of an annuity, life estate, remainder, or reversion transferred after November 30, 1983, and before May 1, 1989.

> The actuarial tables referred to above are provided as an administrative necessity and their general use has been approved by the courts. Simpson v. United States, 252 U.S. 547, 550-551 (1920); Estate of Fabric v. Commissioner, 83 T.C. 932, 941 (1984). The actuarial tables regularly are applied in valuing contingent property interests given that they "afford a reasonable norm and some degree of certainty in ascertaining the value of property and the consequent tax liabilities of the beneficiaries thereof." Miami Beach First Natl. Bank v. United States, 443 F.2d 116, 119 (5th Cir. 1971).

> Nonetheless, the courts have long recognized that the actuarial tables should not be applied in those "exceptional cases" where the result would be unreasonable. Id. at 120; Estate of Lion v. Commissioner, 438 F.2d 56, 61 (4th Cir. 1971), affg. 52 T.C. 601 (1969); Weller v. Commissioner, 38 T.C. 790, 803 (1962). The party seeking to eschew the actuarial tables bears the burden of proving that the circumstances justify a departure from the norm. Bank of California v. United States, 672 F.2d 758, 759-760 (9th Cir. 1982); Continental Ill. Natl. Bank & Trust Co. v. United States, 504 F.2d 586, 594 (7th Cir. 1974); Weller v. Commissioner, supra. [Estate of McLendon v. Commissioner, 66 TCM (CCH) at 964, 64 TCM (RIA) at 2456.]

As our survey of the case law in our earlier Memorandum Opinion reveals, there has been a substantial amount of litigation involving the question of the circumstances that would justify a departure from the actuarial tables.

For purposes of the discussion that follows, it is important to recognize that the parties to this case disagree as to the proper standard to apply in determining whether a departure from the actuarial tables is warranted.[1]  In particular, respondent relies on <u>Miami Beach First Natl. Bank v. United States</u>, 443 F.2d 116 (5th Cir. 1971), and <u>Estate of Fabric v. Commissioner</u>, 83 T.C. 932 (1984), for the proposition that it is proper to depart from the actuarial tables where death is either "imminent or predictable".  On the other hand, petitioner relies on Rev. Rul. 80-80, 1980-1 C.B. 194, in support of its position that the controlling standard is whether death is "clearly imminent".

Rev. Rul. 80-80, 1980-1 C.B. 194, 195, states in pertinent part:

> In view of recent case law, the resulting principle is as follows: the current actuarial tables in the regulations shall be applied if valuation of an individual's life interest is required for purposes of the federal estate or gift taxes unless the individual is known to have been afflicted, at the time of transfer, with an incurable physical condition that is in such an advanced stage that death is clearly imminent.  Death is not clearly imminent if there is a reasonable possibility of survival for more than a very

[1]As stated in our earlier Memorandum Opinion:

The crux of the dispute centers on whether Gordon's death was sufficiently certain as of March 5, 1986, as to justify a deviation from the actuarial tables.  At a more fundamental level, the parties disagree with respect to the specific legal standard to apply in resolving this issue. [<u>Estate of McLendon v. Commissioner</u>, T.C. Memo. 1993-459, 66 TCM (CCH) at 964, 64 TCM (RIA) at 2456 (slip op. at 57).]

brief period.  For example, death is not clearly imminent if the individual may survive for a year or more and if such a possibility is not so remote as to be negligible.  If the evidence indicates that the decedent will survive for less than a year, no inference should be drawn that death will be regarded as clearly imminent, because this question depends on all the facts and circumstances.

We acknowledge, as the Court of Appeals suggested, that we did not expressly apply the "clearly imminent" standard articulated in Rev. Rul. 80-80, supra, in this case, nor, as explained below, did we feel that we were obliged to do so.  Short of wholly ignoring Rev. Rul. 80-80, supra, however, we reviewed the ruling and concluded that respondent's position was not inconsistent with the standard set forth therein.[2]  Estate of McLendon v. Commissioner, 66 TCM (CCH) at 965 n.17, 64 TCM (RIA) at 2456 n.17.

Ultimately, we applied a standard other than that set forth in Rev. Rul. 80-80, supra, based upon our survey of the case law and our understanding of both the revenue ruling and the parties' respective positions.  Our survey of the case law disclosed that no court, including the Fifth Circuit, has expressly adopted the "clearly imminent" standard articulated in the ruling.[3]  Further,

_____

[2]As explained in greater detail below, we would nevertheless sustain respondent's determination that petitioner erred in relying on sec. 25.2512-5(f) (Table A), Gift Tax Regs., even assuming that the standard set forth in Rev. Rul. 80-80, 1980-1 C.B. 194, is controlling.

[3]We note that Miami Beach First Natl. Bank v. United States,
(continued...)

we found the standard articulated in the ruling to be somewhat vague relative to the approach taken by the courts addressing the question.  Equally important, we did not feel bound to apply Rev. Rul. 80-80, supra.  Absent exceptional circumstances, revenue rulings are viewed as "merely an opinion of a lawyer in the agency", they are not considered to have the effect of law, and they are not binding on the Commissioner or the courts.  See sec. 6110(j)(3); Foil v. Commissioner, 920 F.2d 1196, 1201 (5th Cir. 1990), affg. 92 T.C. 376 (1989); Stubbs, Overbeck & Associates v. United States, 445 F.2d 1142, 1146-1147 (5th Cir. 1971); Lucky Stores, Inc. & Subs. v. Commissioner, 105 T.C. 420, 433 (1995); Gordon v. Commissioner, 88 T.C. 630, 635-636 n.3 (1987); see also Dickman v. Commissioner, 465 U.S. 330, 343 (1984).  Of course, a revenue ruling may achieve the force of law when a statute has been reenacted unchanged after the interpretation of the statute in the ruling was expressly called to congressional attention. See Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 n.4 (1975), affd. in part and revd. in part 613 F.2d 770 (9th Cir. 1980).  In addition, the Court of Appeals for the Fifth Circuit has held that a revenue ruling may be binding on the Commissioner where a taxpayer relies on the ruling and there is not a statute,

---

[3](...continued)
443 F.2d 116 (5th Cir. 1971), the Court of Appeals for the Fifth Circuit's most detailed discussion of the issue presented herein, predated the issuance of Rev. Rul. 80-80, 1980-1 C.B. 194.

regulation, or case law on point.  See <u>Silco, Inc. v. United States</u>, 779 F.2d 282, 286-287 (5th Cir. 1986).  In light of the plethora of case law involving the issue presented herein, and given that Rev. Rul. 80-80, <u>supra</u>, is nothing more than an interpretation of the case law, we do not consider the ruling to have the force of law. It is worth noting here that petitioner did not argue that respondent is somehow estopped to deny that Rev. Rul. 80-80, <u>supra</u>, is controlling,[4] nor would petitioner have been likely to prevail on such an argument.  See <u>Dickman v. Commissioner</u>, <u>supra</u> at 343.  In this regard, respondent was free to modify her position vis-a-vis the revenue ruling.

After reviewing the case law, and particularly the Court of Appeals for the Fifth Circuit's opinion in <u>Miami Beach First</u>

---

[4]Petitioner's reply brief, at 35, states:

Respondent also ignores her own published Revenue Ruling (Rev. Rul. 80-80, 1980-1 C.B. 194) which was issued by Respondent to offer guidance to taxpayers dealing with the very question we have here for decision.  Respondent ignores Rev. Rul. 80-80 despite written indication from the National Office of the Internal Revenue Service that it considers Rev. Rul. 80-80 the governing authority in this area and that further, the Internal Revenue Service follows the mandates of Rev. Rul. 80-80 in their litigating posture.  It would appear that there is a very serious lack of coordination between the National Office of the Internal Revenue Service and local IRS trial counsel in Dallas, Texas.  See <u>Estate of Powell</u>, T.C. Memo. 1992-367.

We do not view the foregoing as stating a claim that respondent should be estopped from advocating a legal standard other than that set forth in Rev. Rul. 80-80, 1980-1 C.B. 194.

Natl. Bank v. Commissioner, supra, and the cases cited therein

(including our opinion in Estate of Jennings v. Commissioner, 10

T.C. 323 (1948)), we concluded:

> The common theme of these cases is that the actuarial tables generally are to be respected unless the established facts show that the result under the tables is unrealistic or unreasonable.  Consistent with the Estate of Jennings line of cases, the proper inquiry in this case is whether the life tenant's actual life expectancy is so exceptional that a departure from the actuarial tables is justified. While the term "exceptional" is difficult to define, Estate of Jennings and its progeny require proof that death is either imminent or predictable to a reasonable certainty within 1 year of the valuation date. [Estate of McLendon v. Commissioner, 66 TCM (CCH) at 967, 64 TCM (RIA) at 2459; emphasis added.]

In applying the foregoing standard to the facts as we found

them, we concluded as follows:

> In sum, the record as a whole paints a picture of an increasingly sick man suffering from a virtually incurable disease.  Although Gordon's physical condition fluctuated from day to day, the overall trend was one of fairly rapid deterioration.  Under the circumstances, we conclude that it was evident to all involved that Gordon was not likely to survive more than 1 year from March 5, 1986.[21]  In light of Gordon's diminished actual life expectancy on the date that the private annuity agreement was executed, we hold that it was improper for Gordon to compute the value of the remainder interest in question under section 25.2512-5(f) (Table A), Gift Tax Regs.  Rather, the remainder interest is properly valued based on Gordon's actual life expectancy as of March 5, 1986, which we hold to be 1 year. [Estate of McLendon v. Commissioner, 66 TCM (CCH) at 968, 64 TCM (RIA) at 2460.]

_____

[21]Given contemporary advances in medicine and the ability to sustain life, we recognize that it is increasingly difficult to predict actual life expectancy with a high degree of certainty.  We respect

> Dr. Fleischman's candor in admitting that Gordon's death could not be predicted with "absolute certainty." However, when a disease has progressed to such an extent as was present in the instant case, it becomes evident to those familiar with the physical condition of the patient that a cure cannot be expected and that death will inevitably follow.

The language quoted above was intended to convey our view that, as of March 5, 1986, decedent's death was predictable within 1 year to a reasonable certainty. We therefore ruled that it was improper to value the remainder interest that decedent transferred pursuant to the private annuity agreement under section 25.2512-5(f) (Table A), Gift Tax Regs. Id.

The foregoing aside, we likewise would sustain respondent's determination on this point assuming that the "clearly imminent" standard articulated in Rev. Rul. 80-80, supra, is controlling. Rev. Rul. 80-80, supra, states that the question of whether death is clearly imminent generally is to be determined on the facts and circumstances of the particular case. Decedent did not exhibit any clinical signs of imminent death as of March 5, 1986, nor was he as physically disabled as the individuals described in Estate of Hoelzel v. Commissioner, 28 T.C. 384 (1957), and Estate of Jennings v. Commissioner, supra. Nonetheless, decedent was terminally ill, and his condition was deteriorating fairly rapidly as of March 5, 1986. Estate of McLendon v. Commissioner, 66 TCM (CCH) at 968, 64 TCM (RIA) at 2460. Considering all of the facts and circumstances, we find that on March 5, 1986,

decedent was afflicted with an incurable physical condition that was in such an advanced stage that death was clearly imminent.

We recognize that Rev. Rul. 80-80, supra, states that death is not clearly imminent if the individual may survive for a year or more and if such a possibility is not so remote as to be negligible. Dr. Freireich (petitioner's expert) declined to offer an opinion as to decedent's actual life expectancy as of March 5, 1986. On the other hand, Dr. Fleischman (respondent's expert) stated that, from a statistical standpoint, the likelihood that decedent would live another year was 10 percent or less. Considering all of the facts and circumstances, we find that although decedent's life expectancy may have been as long as 1 year as of March 5, 1986, decedent's continuing deterioration at that time demonstrates that the possibility of decedent's survival for a year or more was so remote as to be negligible.

A final point of clarification is necessary. While we indeed held decedent's actual life expectancy as of March 5, 1986, to be 1 year, that statement was not so much intended to serve as this Court's "Solomon-like" declaration of the precise number of days decedent would survive, but rather was intended to give petitioner the benefit of the doubt so far as a determination of actual life expectancy was necessary in order for the parties to complete the computations required for entry of decision in this case. See Rule 155. Consistent with Dr.

Fleischman's testimony, we continue to believe that the possibility that decedent would survive a year or more from March 5, 1986, was remote at best.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.